CARLAND *v.* WESTERN UNION TELEGRAPH CO.

1. PLEADING—JOINDER OF COUNTS.
   A special count in *assumpsit* may be joined with the common counts.

2. SAME—ELECTION.
   Where the common counts were practically abandoned, there being nothing in the case to support them, it was not necessary to compel an election of counts.

3. TELEGRAPH COMPANIES — FAILURE TO TRANSMIT MESSAGE — ACTION FOR DAMAGES—ASSUMPSIT.
   An action by the sender of a telegram against the company to recover damages for failure promptly to transmit and deliver the message may be brought in *assumpsit*.

4. SAME—RULES AND REGULATIONS—NOTICE TO SENDER.
   The sender of a telegram is bound by the rules and regulations under which the company transmits messages only so far as they are brought to his knowledge.

118 MICH.—24.

118   369
124    53

118   369
s76NW 762
s74ASR 394
131  10333

118   369
e150  8 55

5. SAME—PRESUMPTION OF NOTICE.

There is no presumption that business men are acquainted with the conditions usually imposed upon patrons by telegraph companies.

6. SAME—TELEPHONING MESSAGE TO OPERATOR.

An operator of a telegraph company is the agent of the company in receiving over a telephone a message to be transmitted by the company, in the absence of any showing that the company forbade such practice, or that, if it was forbidden, the sender had notice of such regulation.

7. SAME—CIPHER MESSAGES—INTERPRETATION.

The meaning of a cipher telegram may be shown by the sender in an action by him against the company for failure promptly to transmit the same.

8. SAME—NONDELIVERY—ADMISSIONS OF OPERATOR.

A statement by a telegraph operator to the sender of a message, that it has not been delivered, made as a report of his efforts to trace the telegram, is admissible, as against the telegraph company, to show the fact of nondelivery.

9. EVIDENCE—QUESTION FOR JURY.

Testimony of a witness that he knew the price of wheat at C. on a certain day, where his cross-examination did not show that he had no knowledge on the subject, was sufficient to justify the court in submitting the question of such price to the jury.

10. CONTRACTS—DEALINGS IN FUTURES—WHEN VALID.

Plaintiff, in January, telegraphed his broker in Chicago to buy 3,000 bushels of May wheat. In an action against the telegraph company for failure promptly to transmit the telegram, he testified that he expected to pay for and actually receive the grain. *Held*, that it could not be said, as a matter of law, that the contract contemplated was void as a gambling contract, within 3 How. Stat. § 9354*f*, prohibiting the purchase and sale of grain, etc., on margins for future or optional delivery, without intention of receiving or paying for the property so bought and sold.

Error to Shiawassee; Smith, J. Submitted October 4, 1898. Decided October 18, 1898.

*Assumpsit* by John E. Carland against the Western Union Telegraph Company for failure to deliver a message.

From a judgment for plaintiff, defendant brings error. Affirmed.

*John T. McCurdy*, for appellant.

*Watson & Chapman*, for appellee.

HOOKER, J.  The plaintiff's action was brought to recover damages from the defendant for its failure to promptly transmit and deliver a telegram, whereby the plaintiff is said to have suffered a loss.  The record contains testimony tending to show that the plaintiff, a merchant, residing at Corunna, called the office of the defendant at that place by telephone.  Mr. Young, defendant's agent, responded, whereupon the plaintiff asked him to take a message, which he did.  The message was as follows, viz. :

"CORUNNA, MICH., Jan. 25, 1898.

"To G. W. WYLIE COMPANY,

"145 Van Buren Street,

"Chicago, Ill.

"Buy three May.          JOHN E. CARLAND."

It was intended to be understood to mean, "Buy 3,000 bushels of May wheat."

After waiting 24 hours without response to his message, the plaintiff called the defendant's office by telephone, and was answered by Mr. Reed, Young's assistant, who, in response to his inquiry, assured him that the message was sent.  Twenty-four hours later the plaintiff called upon Young, who said he would trace the message, and he reported later that the message was never received at the Chicago office, and a duplicate of the message was sent on January 28th.  The testimony tended to prove further that the price of wheat advanced meantime, and plaintiff's agent was obliged to pay a higher price than would have been necessary had the first message been sent promptly.  A verdict was rendered in favor of the plaintiff, and the defendant has brought the case to this court by writ of error.

The action was commenced before a justice of the peace. The docket shows that:

"Plaintiff declared orally on all matters provable under the common counts in *assumpsit*, and especially on a contract with said defendant, and files a written memorandum of said contract, and claims damages $300 or under.

"*Written Memoranda of Plaintiff's Declaration Herein.*

"Plaintiff says that heretofore, to wit, on the 25th day of January, A. D. 1898, said defendant was, and still is, a telegraph company and corporation engaged in the telegraph business, and a common carrier of telegraph messages. And on, to wit, the 25th day of January, 1898, said defendant undertook, for a valuable consideration, to wit, 40 cents, to convey and deliver for said plaintiff a telegraph message to G. W. Wylie & Co., No. 145 Van Buren street, Chicago, Ill., which message was as follows: 'Corunna, Mich., Jan. 25th, 1898. To G. W. Wylie & Co., 145 Van Buren Street, Chicago, Ill.: Buy three May. J. E. Carland,'—which message instructed G. W. Wylie to purchase for said plaintiff 3,000 bushels of wheat, to be delivered to said plaintiff on May first. And said defendant, by its contract with said plaintiff, owed said plaintiff a duty to deliver said telegram promptly, and without unnecessary delay. But, notwithstanding such contract and duty, said defendant wholly failed to deliver said telegram in any manner, and wholly failed and neglected so to do, and, on account of such failure and neglect of said defendant, said plaintiff was deprived of and lost large gain and profits on said wheat which the said George W. Wylie would have purchased for this plaintiff, and said plaintiff was deprived of the opportunity of purchasing said wheat on said 25th day of January, 1898, and on account of which said plaintiff has been damaged in the sum of $300, for the recovery of which this suit is brought.

"J. E. CARLAND."

Several assignments of error relate to the declaration, it being claimed that it does not state a cause of action; that there is a misjoinder of counts; that the *ad damnum* clause, being $300, was fatal to the jurisdiction of the justice; and that, if none of these points are valid, the court should have compelled an election of counts.

It is manifest from the record that the plaintiff did not recover upon the common counts, and that, there being nothing in the case that tended to support them, they were practically abandoned, and an election would have been an empty form.

The special count appears to have been intended as a count in *assumpsit* for the breach of a contract, and not a count in case for a negligent injury in the nature of a tort. See Tiff. Justice's Guide (How. 5th Ed.), 183. It follows that, being a count in *assumpsit*, it was properly joined with the common counts, as "all causes of actions enforceable in *assumpsit* may be joined." 1 Enc. Pl. & Prac. 169.

But it is contended that there can be no recovery in *assumpsit* in such cases, and that the action must be case for a breach of duty, and not *assumpsit* for breach of contract. Counsel says that the "gist of these actions is negligence," quoting the language of Mr. Justice GRANT in *Birkett* v. *Telegraph Co.*, 103 Mich. 367 (33 L. R. A. 404, 50 Am. St. Rep. 374). We think counsel has misinterpreted this language, and that there is nothing in that case which compels one having contract relations with a telegraph company to forego an action of *assumpsit* upon breach of the contract, and resort to an action *ex delicto*. It was true that negligence was the gist of that action, because the conditions which were made a part of the contract made it essential to recovery. In this case the plaintiff's claim is that the usual conditions are not a part of the contract.

"Where the sender can show that, through the negligence of the company in transmitting or delivering a message, he has suffered a legal injury, there can be no question as to his right to sue for damages; and this whether the right of action be regarded as resting in contract, or in tort for the breach of public duty." 25 Am. & Eng. Enc. Law, 824; Gray, Telegraphs, § 64; *Playford* v. *Telegraph Co.*, L. R. 4 Q. B. 706, 10 Best & S. 759.

Again:

"The action is properly one *ex contractu*, and based on

the contract of sending." 25 Am. & Eng. Enc. Law, 830.

In the case of *Western Union Telegraph Co.* v. *Carew*, 15 Mich. 525, cited by counsel, the action was *assumpsit*, and, though the case was reversed, the court seems to have recognized the propriety of the form of action by ordering a new trial.    There may be cases where an action upon contract would not be appropriate, as where the plaintiff was not a party to the contract.    In actions brought by the person to whom the message is addressed, some of the courts so hold.    This is so in England, where the rule is strictly enforced; but in this country there is a want of harmony upon the subject. See 25 Am. & Eng. Enc. Law, 824.

This also disposes of the jurisdictional question, as the statute (2 How. Stat. § 6814) confers concurrent jurisdiction upon justices of the peace in all civil actions upon contract where the debt or damages do not exceed $300. The declaration was entitled to the liberal treatment which the courts accord to pleadings in justice's court, and sufficiently set forth the alleged contract, and its breach, to apprise the defendant of the plaintiff's claim.    This also disposes of the objection made to the introduction of the depositions.

A number of questions relate to the alleged contract. It is contended that the contract to send the message was subject to the conditions which the defendant usually imposes upon its patrons; that Young was, by the plaintiff, made his agent to write the telegram upon the blank containing the conditions; and that receiving a message upon any other terms than such conditions would be outside of the scope of Young's authority.    Young, being the person in charge of the defendant's business, and authorized to receive telegrams, was acting within the general scope of his authority in so doing, and the plaintiff was not bound, at his peril, to ascertain the secret instructions that the defendant had given in relation thereto.    In Maryland some recognition has been given to the defendant's conten-

tion by cases which hold that the sender of a message must be supposed to be informed in regard to the rules and regulations of the telegraph company; but the weight of authority is to the contrary.    See Thomp. Elect. §§ 211, 212, for a discussion of this subject; also, 25 Am. & Eng. Enc. Law, 804; *Beasley* v. *Telegraph Co.*, 39 Fed. 181. But, while this is true, if the plaintiff had knowledge of the rules and regulations under which the defendant did business, he would be bound by them so far as they were valid and binding upon others, and it was a question for a jury to determine whether he had such knowledge or not, if a question in the case.

Should it be said that Young, in receiving. by telephone and writing such message, was the agent of the plaintiff? We are cited to several cases holding that the operator is such agent, under somewhat similar circumstances. Thus, in the case of *Western Union Telegraph Co.* v. *Edsall*, 63 Tex. 677, where, at the request of the sender of the message, it was written by the operator upon a blank of the company, which the sender signed, it was held that the operator was, as to that message and its preparation, the agent of the sender.    The court said: "Evidently the operator, in the preparation of the message, was acting for the appellee, and not the company. True, he was the agent of the company to receive and forward messages, but not to write messages for others." This case was followed in the case of *Western Union Telegraph Co.* v. *Foster*, 64 Tex. 220 (53 Am. Rep. 754). In that case the sender wrote the message, and, upon its being read over by the clerk, he (the sender) detected a mistake in it, and the clerk undertook to correct it by an interlineation, which he made in a wrong place.    The court held that he was not acting within the scope of his authority, and was the agent of the sender.    In a still later case the Texas court of civil appeals has sustained this doctrine.    See *Gulf, etc., R. Co.* v. *Geer*, 5 Tex. Civ. App. 349.    The original message, written upon a piece of brown paper, was rejected by the operator as

unintelligible, and by him handed back to the person sent by the plaintiff to deliver the same. Plaintiff's messenger stated to the operator that he was hot and nervous, and asked the operator to write down the message. He wrote it on a telegraphic blank, as dictated, and sent it. It was held that the operator, in the preparation of the message, was acting for the sender, and not the company, and that the plaintiff could not, therefore, complain of his act in writing the message upon the form commonly used for the purpose, and that the conditions upon the blank were binding upon the sender.

It seems to us that in the cases cited the Texas court went too far if it took judicial notice that the scope of the agent's authority did not permit him to write messages for those desiring to send them, who, from infirmity, were incapacitated from writing the same, or were, from ignorance, unable to do so. The law does not forbid such authority, nor does it make it the duty of the sender to write the message. If the rules of the company forbade it, there is nothing in the case to show that the fact was brought home to the knowledge of the patron, and the rule would have no greater force than any other of which he was ignorant. We cannot conclude, in the absence of proof, that the telegraph companies expect their operators to turn away patrons who cannot write, or that they keep telephones in the office, but do not permit their use in their business by their patrons who send and receive messages. And we are of the opinion that such use should not be altogether at the peril of the patron, or that he should suffer for mistakes made at either end of the line, merely because such are the instructions to the operator, or made the subject of a rule of which the patron has no knowledge. It would seem more reasonable to hold such acts to be within the general scope of his authority, or, at least, hold it to be a question for a jury. There is sufficient justification for the decision in the *Edsall Case* without invoking such a rule, for the sender signed the message upon the blank, thus making it his own, under

the current weight of authority that so holds, although the conditions be not read. 25 Am. & Eng. Enc. Law, 805, and cases cited in note 1. So, in the case of *Gulf, etc., R. Co.* v. *Geer, supra,* the message was written upon the blank by request. The *Foster Case, supra,* more nearly sustains defendant's contention. We are cited to no authorities in support of the Texas cases. We are of the opinion, therefore, that the court committed no error in holding that Mr. Young acted as agent for the defendant, under the proofs contained in the record, and might properly have instructed the jury that he was not shown to have acted as agent for the plaintiff.

It is urged that the court erred in permitting the plaintiff to testify to the meaning of the words used in the dispatch, viz., "Buy three May." Counsel cites some authorities supporting the doctrine that such evidence is not admissible where the statute of frauds has application; but no such question is raised here. There was no contract with the Wylie Company; merely a request to purchase something. If the language had a secret meaning, it was proper to show the fact. Ciphers play an important part in business affairs, and we see no reason why they are not as proper subjects for translation as foreign languages.

The defendant asserts further that there was no competent evidence that the telegram was not delivered. Young stated such fact to the plaintiff before sending the duplicate message, and we think this was an act within the scope of his authority, and a part of this transaction. As it is not in any way contradicted, it is unnecessary to inquire whether the testimony of the Chicago witnesses upon the same subject was admissible or not.

We are of the opinion that the court did not err in leaving the question of the price of wheat at Chicago to the jury. The plaintiff testified that he knew what it was, and his cross-examination did not show that he had no knowledge upon the subject.

It is contended further that this telegram was sent in

furtherance of a gambling contract, which would have been void under the statute, and that damages for a failure to deliver it cannot be recovered. 3 How. Stat. § 9354$f$, prohibits the purchase and sale of grain, etc., on margins for future or optional delivery, without any intention of receiving or paying for the property so bought or sold. If this claim were conclusively proved, so that we could find the fact as alleged, we should have no doubt that the plaintiff's action must fail; but this is a disputed fact. The plaintiff testified that such an arrangement was not contemplated, and that he expected to pay for and receive the grain. We have no occasion to express our opinion of the matter. There was evidence for the jury, and the responsibility of justly determining this fact was theirs. Every contract for a future delivery of grain is not a gambling contract. It is only when the parties mutually understand it to be such, and no actual sale or purchase or contemplated delivery is involved, and where the one is to pay and the other receive the amount of fluctuations in the market, that this statute applies. It is the pretended, and not the actual, buying and selling of grain, etc., that is prohibited. An extended discussion of this subject will be found in 8 Am. & Eng. Enc. Law, 1005 *et seq.* The subject is also fully discussed by Mr. Justice MARSTON in *Gregory* v. *Wendell*, 39 Mich. 338 (33 Am. Rep. 390), and later, upon another review of the same case, by Mr. Justice COOLEY. See 40 Mich. 435.

The judgment is affirmed.

The other Justices concurred.