WESTERN UNION TELEGRAPH COMPANY v. A. N. HANKINS.

Decided April 30, 1908.

1.—Telegraph—Misdirected Message—Question of Fact.

Misdirection of a telegram to "Holenville," there being no such place, instead of "Holdenville," a railway and telegraph station and the intended destination, did not, as matter of law, show that there was no undertaking by the

company to deliver at the latter place, or justify an instruction to find for defendant in a suit for damages for failure to transmit the message, where the receiving agent was advised of the true destination, looked up and found the correct station on a list of offices, and there was evidence to support the conclusion that he himself wrote the message and was responsible for the misspelling.

**2.—Same—Idem Sonans.**

"Holenville" for "Holdenville" is so far idem sonans as to present a question of fact as to its sufficiency to identify the destination named in a telegram.

**3.—Same—Agency—Offices—Duty to Give Information.**

Though the dispatcher acts as agent of the sender in reducing to writing at his request the message desired to be sent, it is the duty of the company to know and correctly inform senders as to its offices and stations; and the agent represents the company in giving such information, especially where the rules require him to do so and to exercise care to see that the destination is correctly given.

Appeal from the District Court of Hopkins County. Tried below before Hon. R. L. Porter.

*N. L. Lindsley* (*Geo. H. Fearons,* of counsel), for appellant.—Appellee, if entitled to recover at all, can recover only on the contract actually made with the appellant; he is not entitled to recover for failure to deliver a message to a wholly different place from that which appellant contracted. Telegraph Co. v. Smith, 30 S. W., 49.

*Templeton, Crosby & Dinsmore,* for appellee.—Appellant's agent in charge of its office being informed that appellee's agent did not know the correct name of the office to which the message was to be sent, and having in the proper discharge of his duties undertaken to give appellee's agent the proper name of the town, and having found the true name, and having then written the message, spelling the name of the station improperly, appellant is bound by his acts, and is chargeable with his negligence. The words "Holdenville" and "Holenville" are idem sonans, and the difference in the spelling does not excuse the failure to transmit and deliver the message. Neither appellant nor any of its agents were misled by the misspelling of the name in the message, and they knew, or ought by the exercise of ordinary care to have known, that the message was intended to be sent to Holdenville. Western U. Tel. Co. v. Burrow, 10 Texas Civ. App., 122; Western U. Tel. Co. v. Downs, 62 S. W., 1078; Western U. Tel. Co. v. Jones, 30 Am. St. Rep., 581; Dillahunty v. Davis, 74 Texas, 345; Tevis v. Collies, 84 Texas, 639.

LEVY, Associate Justice.—This suit was brought by the appellee to recover damages for mental anguish alleged to have been suffered by him on account of his failure to be present at his mother's bedside prior to her death and at her funeral, which he could and would have been present at and attended but for the negligence of the appellant company in failing to transmit and deliver to him the following telegraphic message sent for his benefit: "Brashear, Texas, Jan. 20, 1906. To Alvie Hankins, Holenville, I. T. Come at once; mother not expected to live. J. G. Hankins."

Trial was had before a jury, and in accordance with their verdict a judgment was rendered in favor of the appellee; from which judgment the appellant company brings this case on appeal to have revised for the error assigned.

The appeal is rested on the one assignment of error, which reads:

"The court erred in refusing to instruct the jury peremptorily in favor of the defendant for the reason that the plaintiff in this case seeks to recover for failure to deliver a message to Alvie Hankins at Holdenville, I. T., whereas, the message subject of this suit, and contract actually made between the parties to this suit, show that the defendant did not contract to deliver the message sued on to Alvie Hankins at Holdenville, I. T., but that it contracted to deliver the message to another and wholly different place."

The proposition under this assignment is: "Appellee, if entitled to recover at all, can recover only on the contract actually made with the appellant; he is not entitled to recover for failure to deliver a message to a wholly different place from that which appellant contracted."

The allegations in the petition, which are here only stated as have relation to the question presented, are that, at the time the message sued on was filed with the company at Brashear, the addressee, who is the appellee, was residing three miles southeast from the town of Holdenville, Indian Territory; the message was filed with the company early in the morning of the 20th day of January, 1906, and there was demanded by the agent and paid by the sender° at the time of filing the sum of two dollars for transmitting the message to Holdenville, I. T., and for conveying it from Holdenville to the addressee three miles in the country; that the agent at the time the message was filed with him was told and informed by the sender that the addressee was to be found three miles southeast from the town of Holdenville, I. T.; "that in fact and in truth the proper address of the said message was to Holdenville, I. T., although it was written Holenville, I. T., and defendant's said agent at the time he received the said message and undertook to forward the same as aforesaid was informed and knew that the omission of the letter "d" in the name of the said town was a clerical error, and was informed and knew that the true address, and the address intended, was Holdenville, I. T.; and plaintiff avers that defendant at said time had no office at any place in the Indian Territory called Holenville, and that defendant's said agent at the time he received and undertook in behalf of the defendant to forward and deliver the said message knew that the said message was intended to be sent to Holdenville, I. T., and in fact undertook to transmit the said message to Holdenville, I. T., and to there deliver the same to plaintiff aforesaid; that defendant's said agent was not misled by the spelling of the said name, and that there was not and could not have been a reasonable doubt in the mind of defendant's said agent that the said message was intended for, and was to be sent to the town of Holdenville, I. T.;" that the failure to transmit and deliver the message constituted negligence on the part of the defendant company. In this connection the evidence shows that J. G. Hankins, who is the father of the appellee, lived six miles from Brashear, Texas, and that appellee, who is the addressee, lived three miles from the town

of Holdenville, in the Indian Territory. During the night of January 19, 1906, J. G. Hankins was informed by the attending physician that his wife, and appellee's mother, was seriously ill, and was not likely to recover, and he then caused the telegraphic message in suit to be sent by his neighbor, Benton, to the appellee. Benton testifies: that early in the morning of January 20, 1906, he rode to the town of Brashear to appellant's telegraph office to send the message to appellee for J. G. Hankins; he went into the telegraph office and saw the agent. He said, "I told the agent what I was down there for. I told him I wanted to send a message to Alvie Hankins, in the Territory. I told him that his mother was very ill, and not expected to live, and for him to come at once. I told him it was at Holdenville, in the Indian Territory. I told him he could be found two or three miles from that place. The agent said he would see if he could get the message through. He went in and looked around and tried to call up somebody. He then looked through his books, and said he did not know, and would have to find out where Holdenville was at, and whether it was a telegraph office. He got some books or papers and found in the books that Holdenville had a railroad there and was a telegraph office. I asked him what it would cost, and he said fifty cents. I asked him about delivering the message. He said if the message was sent there or sent out there through the mail or rural route it would be sent at my risk. He asked me how far out it was and I told him three miles, and he said it would cost me fifty cents per mile messenger fee. I paid him $2 in all. I started to write the message, but I was cold. I did not know how to spell Holdenville, and I asked the agent if he would write it for me, and he said he would. He wrote it. The agent told me he had sent the message off and then I left for home." The appellant's agent at the time at Brashear testified in this respect as follows: that he received and filed this telegram at 7:30 a. m. "The handwriting of the telegram is mine. When the party came into the office he said he wanted to send a message, and I handed him a blank telegram. He started to write, and had gotten about half way down, and said his fingers were cold, and asked me to finish it. I took it and recopied it, and finished it for him. He told me what words to put in the telegram. After I wrote the telegram he remained there until I got it off. I got it off by nine o'clock. I sent it to the Dallas relay office. The Dallas relay office communicated with me about this message, and said the message could not be accepted because there was no Holenville in the Indian Territory. I then went out to look for the party who filed the message, and could not find him in town, and upon inquiry learned from some people in the town that he had gone back to the country." This witness on cross-examination said that "Benton when he came into the office told me he wanted to send a message about J. G. Hankin's wife to his son. He told me where he wanted to send it, and asked me if I could send it. I did not know at the time he asked me whether or not I could send a message to Holdenville. To find out I took a railroad guide furnished by the railroad company, and which has all the towns in the United States operating railways, and I thought sure if on a railroad it would be a Western Union, or Postal, or Southwestern, or some of those commercial tele-

graph stations. I found Holdenville, or Holenville, or something; I don't know what name I found. I know I would not have written or accepted a message until I found out whether I could send it or not. I took the message; I supposed there was a telegraph station there. He told me the message was to be delivered three miles from Holdenville. I wrote this telegram; I wrote Holenville." In rebuttal the witness said: "When I wrote the telegram out at the request of Mr. Benton he did not request me to spell the town different from what it is spelled in the telegram. He did not give me any instructions to change the word. I did not know how to spell it." It was proven that Holdenville was a telegraph station at the time in the Indian Territory, and that there was no place on its line called or known as Holenville. The message was not delivered to appellee. His mother died the night of the 20th, and her corpse was held over a day for her son to be at the funeral. He did not know of her death until he received a letter to that effect the following week.

Looking to the evidence surrounding the making of the contract of transmission of the message, it sufficiently appears that the agent of appellant and Benton, acting for the sender of the message, had in mind an intention of sending the message to Holdenville, I. T., and that no other place was in mind or contemplation of the parties. In reducing to writing the name of the station or place where the message was designed to go, the name of the terminal station or place was misspelled by omitting the letter "d." We think the jury might have found from the evidence that the contract made was for transmission of the message to Holdenville, I. T. It was proven that there was no place called or known as "Holenville" on appellant's line in the Indian Territory, but that there was a "Holdenville" in the Indian Territory on its line. The names "Holenville" and "Holdenville" are so similar as to give notice under the doctrine of *idem sonans,* and to be sufficient to sustain a finding by the jury that Holenville in the message was the same town as Holdenville, an office on appellant's line and the place where the message was contracted to be transmitted. A concordance in name alone is always some evidence of identity. 1 Greenleaf on Ev., sec. 43a. The names "Gibney" and "Gibony" was held *idem sonans,* and sufficient to support the finding that Gibony was in fact the party to whom the land certificate was granted. Fleming v. Giboney, 81 Texas, 422. Where the name of the addressee of a telegram was written Codgell instead of Cogdell, as it should have been, the question whether the similarity in the names was such as to suggest to the company's employes at the terminal office the identity of the addressee was properly submitted to the jury. Cogdell v. Western U. Tel. Co., 47 S. E., 490. If there was no place Holenville, and Holdenville was a place on the appellant's line, and the place in fact contracted by the parties to have the message transmitted, and the difference in the spelling of the name of the place was not reasonably calculated to mislead the appellant's agents as to the address of appellee, then the findings to that effect would impose upon the appellant the legal duty to transmit the message to the terminal office contracted to be sent. In this view we think the testimony abundantly sufficient to warrant such findings by the jury. There was also evidence on the part of

Benton, acting in the sending of the message, that the agent receiving the message himself misspelled the name of the terminal office, in writing the message for Benton. The agent admits the message was in his handwriting, though he claims that he copied what Benton in that respect had written. The agent admits that Holdenville, I. T., was the place where Benton told him he wanted the message sent, and in his answers further says: "I wrote Holenville; when I wrote out the telegram at the request of Mr. Benton he did not request me to spell the town different from what it is spelled in the telegram; he did not give me any instructions to change the word; I did not know how to spell it." Benton testified that he told the agent that he wanted to send the message to Holdenville, I. T., and said, "The agent said he would see if he could get the message through; he got some books or papers and found in the books that Holdenville was a telegraphic office, I started to write the message, but I was cold; I didn't know how to spell Holdenville, and I asked the agent if he would write it for me, and he said he would; he wrote it." In this connection there was read in evidence a rule of the company which says: "The receiving clerk should give any aid or explanation necessary to enable the sender to prepare his message so that errors or delays may be avoided. The importance of the address can not be over-estimated. When the address given seems insufficient a better one should be suggested." There was evidence to justify a finding that the agent was responsible for misspelling the name of the terminal office in the message, and we think on such finding that his mistake in misspelling the name of the terminal office would be chargeable to the appellant company. It is true that in the writing of the body of the message for the sender the operator is, in law, in that respect the agent of the sender. But the appellant company owes the public duty to give the correct name of its offices on its line when a sender of a message specifically seeks such information. The name and correct spelling of the name of its own offices is a fact within the knowledge and keeping of the telegraph company, and its agent should use ordinary care to give the name correctly. In the exercise of ordinary care the agent could have gotten the name correctly from the guide book he had just looked at, and should have done so if he "did not know how to spell it." His instructions were to give aid to avoid errors of this very kind. Benton, the sender, told the agent he "did not know how to spell it, and for him to write it." We think that appellant in this case owed to appellee the duty of writing correctly the name of the terminal office, or of correcting the misspelled name of the terminal office if Benton had written it amiss, the agent of the company knowing at the very time of writing the message the true terminal office contracted to have the message transmitted. In this respect in writing the name of appellant's terminal office in the message the agent was acting within the scope of his authority and for appellant company. "It was peculiarly within the apparent scope of the agency of the company's agent at Jackson to know what places messages could be sent, and having received the message to be sent to a place where the company had a wire the company was liable for the failure to transmit and deliver according to the contract with the sender." Western Union Tel. Co.

v. Jones, 30 Am. St., 579. An agent of appellant accepted a message for delivery three miles from Smithfield, where appellant company had no office, and the court in passing on the liability of the company, said: "It was its duty to know, and to keep its agents informed of, the places where it had offices, and its agent should have informed the sender that it had no office at the place addressed; but instead of this its agent misled the sender by accepting the message and agreeing to deliver it, and then failed to correct the mistake, which he could have done in ample time to have avoided the injury." Western Union Tel. Co. v. Hargrove, 14 Texas Civ. App., 79.

Our conclusion is that there was evidence sufficient to require the submission of the case to the jury under appropriate instructions, and that the court did not err in refusing to instruct the jury peremptorily in favor of the appellant for the reason assigned.

There being no error, the case is ordered affirmed.

*Affirmed.*