WESTERN UNION TELEGRAPH COMPANY v. LIZZIE BUCHANAN.

Decided May 18, 1910.

**1.—Assignment of Error—Construction—Practice.**

An assignment of error and proposition thereunder directed against the charge of the court will not be extended beyond that part of the charge complained of. Under this rule, in an action against a telegraph company for negligent alteration of the wording of a telegram, pleading and evidence and charge of the court considered and held not subject to the objection that a particular paragraph of the charge was not based upon the pleadings and evidence.

**2.—Evidence—Admissibility—Practice.**

An objection that certain evidence was not admissible under the pleading is one that should be made in the trial court and can not be urged for the first time on appeal.

**3.—Telegraph Company—Acceptance of Message by Telephone.**

A telegraph company having actually accepted a message for transmission, it would be immaterial, so far as the liability of the company was concerned, whether the message was delivered to the company over the telephone or in person by the sender.

**4.—Telegram—Error—Mental Anguish—Disability.**

A message as delivered to a telegraph company in Texas was worded as follows: "Rachel is sick at Mangum. Please go at once and assist in nursing her." As received, it read: "come at once and assist in burying her." The addressee was the sister of "Rachel" and was visiting in Kansas at the time she received the message; Mangum is in Oklahoma; the message was sent by the father of Rachel and the addressee; upon receipt of the message the addressee (plaintiff herein) believing that her sister was dead and would be buried at their home in Texas, came from Kansas to Texas, and, upon learning that there was a mistake in the message, went from Texas to Mangum, Ok. Held (1) whether or not the message as delivered to plaintiff was reasonably calculated to induce her to believe that her sister was dead and she was wanted at home to assist in burying her, was a question of fact for the jury to determine; and (2) if it was reasonably calculated to produce that belief, the telegraph company would be liable for the mental anguish suffered by plaintiff while under such belief, and for the reasonable expenses incurred in coming to Texas and going thence to Oklahoma.

**5.—Contributory Negligence—Charge—Practice.**

Unless a defendant requests a special charge submitting the issue of contributory negligence, he can not complain of the failure of the court to submit the same when he has not plead such defense, and this, though the pleading and evidence of the plaintiff raise the issue.

Appeal from the District Court of Lavaca County. Tried below before Hon. M. Kennon.

*Hume, Robinson & Hume,* (*Geo. H. Fearons,* of counsel), for appellant.

*Patton & Schwartz,* for appellee.

NEILL, ASSOCIATE JUSTICE.—The appellee, Lizzie Buchanan, and Rachel Buchanan are sisters, and daughters of John Buchanan; and on July 2, 1908, their home was in Hallettsville, Texas, and the deceased members of the family were interred in the cemetery there.

On the day stated Lizzie was in Ellinwood, Kansas, on a visit, and Rachel was in Mangum, Oklahoma, visiting relatives there. Their father, who was then at home, having learned that Rachel was sick, communicated to defendant's agent and telegraph operator at Hallettsville, by telephone, this message: "To Lizzie Buchanan, Ellinwood, Kansas. Rachel is sick at Mangum. Please go at once and assist in nursing her. John Buchanan."—which said agent received over the 'phone, as was customary at said office, wrote it down as received, and promised and undertook in behalf of the Western Union Telegraph Company, for the usual toll which was paid by the sender, to transmit the message over defendant's wires and deliver it to Lizzie at Ellinwood, as it was delivered and received by him from her father at Hallettsville. But, through the negligence of defendant's agent, the wording of the message was so changed as to read as follows:

"Hallettsville, Texas, July 2, 1908.

To Lizzie Buchanan, Ellinwood, Kansas.

Rachel is sick at Mangum. Please come at once and assist in burying her. Jno. Buchanan;" and in its form thus changed, the telegram was delivered to Lizzie in Ellinwood, on the morning of July 3, 1908. Wherefore, the plaintiff was induced from the telegram as delivered to her, to believe that her sister Rachel was dead, and that her remains would be interred in the cemetery at Hallettsville, by the time she could reach there by rail. Therefore, she took the first train from Ellinwood, Kansas, to Hallettsville for the purpose of reaching there in time for the burial, and while en route, at Wallis, Texas, she learned from inquiry by telephone, that her sister was not dead. She then continued her journey to Hallettsville, and learning the condition of Rachel on arriving there, took the next train out for Mangum, Oklahoma, so as to be with her sister and nurse her through her sickness. From the time she received the telegram until she learned at Wallis, that her sister was not dead, plaintiff suffered great pain and distress of mind, induced by the belief that her sister was dead, which was proximately caused by defendant's negligence in changing the wording of the telegram. She sued the defendant to recover damages for the mental anguish she suffered by reason of such negligence, as well as the expenses she incurred by reason of such negligence, in going from Ellinwood to Hallettsville, and thence to Mangum, where her sick sister was.

The defendant's answer consisted of a general demurrer, special exception and a general denial. The case was tried before a jury and resulted in a verdict and judgment in favor of the plaintiff, for the sum of $950.

This part of the court's charge: "If you find from the evidence that at the time alleged in plaintiff's petition John Buchanan delivered to the agent of the defendant at Hallettsville, Texas, the telegram as first set out in the statement of the case in this charge, and that said agent undertook for a valuable consideration to transmit and deliver the same to plaintiff, at Ellinwood, Kansas, and that the same was delivered to the plaintiff at that place, on the 3rd day of July, 1908, in the altered condition as alleged, then you are charged, that to

deliver said telegram so altered was negligence on the part of the defendant," is assigned as error.

The only proposition asserted is: "The charge of the court is not based upon the pleadings and the evidence." The proposition cannot be extended beyond that part of the charge complained of. With this limitation, the proposition can not be sustained. The allegations in the petition are such as clearly to admit evidence of the facts above stated, which were substantially proved on the trial.

While the point is not covered by the proposition, it is argued that, inasmuch as the telegraph message was delivered to and received by defendant's agent at Hallettsville by telephone, and plaintiff having failed to allege that the agent was in the habit of receiving messages by 'phone, proof could not be made of such custom. This is a question as to the admissibility of evidence, and should have been raised upon the trial, instead of here. The material question was not the manner of the delivery of the message to defendant's agent, or the form in which it was accepted by him for transmission in the words of the alleged original message. Upon this, there was no issue of fact; for the undisputed evidence shows that it was so delivered to and accepted by him for transmission. This being so, it can make no difference whether the delivery and acceptance was by telephone or not. Carland v. Western Union Teleg. Co., 118 Mich., 369, 76 N. W., 762, 43 L. R. A. 280; Western U. Tel. Co. v. Todd, 53 N. E., 194; Texas Tel. & Tel. Co. v. Seiders, 9 Texas Civ. App., 431, (29 S. W., 258); Gore v. Western U. Tel. Co., 124 S. W., 977.

The second assignment of error complains of this part of the court's charge: "And if you further find from the evidence that the telegram as altered and delivered to plaintiff, was reasonably calculated to, and did make the impression upon the plaintiff that her sister, Rachel, was dead, and was to be buried at Hallettsville, Texas, and that but for the alteration in the message the plaintiff would have gone to Mangum, where her sister was sick, and would not have made the trip to Hallettsville, then the plaintiff would be entitled to recover for any mental anguish she may have suffered on account of believing, from the message delivered to her, that her sister was dead, and for such reasonable sum as she expended in transportation charges from Ellinwood, Kansas, to Hallettsville, Texas; and from the latter place to Mangum, Oklahoma, and her necessary board en route."

The propositions asserted under it are:

(1). "Plaintiff was not entitled to recover damages for any mental anguish she may have suffered on account of believing from the message delivered to her, that her sister was dead."

(2). "The telegram must be given a legal, reasonable interpretation according to its terms, and as a whole, and plaintiff was not entitled to recover as upon her belief that her sister was dead, and construction of the telegram that it conveyed the information that her sister was dead."

(3). "Where a telegram on its face is not clear as to its meaning, is vague, ambiguous or unintelligible, it is the duty of the addressee to seek to ascertain its correctness."

(4). "In the absence of allegation that plaintiff would have gone

to Mangum where her sister was sick, and would not have made the trip to Hallettsville, it was reversible error for the court to submit said issue."

(5). "It was reversible error for the court to authorize plaintiff to recover for such reasonable sum as she expended in transportation charges from Ellinwood, Kansas, to Hallettsville, Texas, and from the latter place to Mangum, Oklahoma, and her reasonable board en route; there being no pleadings and no evidence as to distance, cost of transportation, and board from Ellinwood to Mangum, and there being no pleading that plaintiff would have gone to Mangum without going to Hallettsville, if the telegram had been correctly transmitted and delivered to her."

It seems to us that if the issues of fact submitted by this part of the charge were found in the affirmative, the converse of the first proposition is true. The evidence raised such issues of fact; for it can not be said as a matter of law, in view of all the facts and circumstances, that the telegram as delivered to plaintiff was not reasonably calculated to induce her to believe that it meant for her to go at once to Hallettsville, and assist in burying her sister Rachel. She could not have believed that she would be called home by her father to assist in burying his daughter, and her sister, unless she was dead; or that her sickness was such that death was so imminently apparent that she would be a corpse when plaintiff, in response to the message, should arrive at Hallettsville. The words, "Come at once and assist in burying her," from their immediately following the sentence, "Rachel is sick at Mangum," cannot be, as a matter of law, construed to mean anything except what they say. Death within a few minutes, is inevitably witnessed in many cases of sickness. So unerringly can immediate dissolution be seen in many cases of sickness, that it can be known with certainty that preparations must soon be made for the burial of the corpse of the one who is sick. Reading the entire message, it was not unreasonable for the plaintiff to thus construe it: "When my father wrote this, my dear sister Rachel was so sick at Mangum that he knew I would find her dead at Hallettsville as soon as I reached there, else he would not call me there, to 'assist in burying her.'"

To say that deep mental anguish would not flow as a natural consequence of defendant's negligence in so changing the telegram as to be thus interpreted by plaintiff, would be a libel upon human nature. Though one may be distressed in the knowledge of the sickness of a sister, yet such distress is ameliorated by the hope of her recovery, even though it be hope against hope; but there is nothing in or of this world, that can assuage the grief which wrings the heart and bows down the head and soul, when informed of the death of a loved one. In such a case a coffin lid closes down over your hope, as well as over the face of your dead, forever. It is no use to attempt a metaphysical analysis, or psychological distinction between the grief one feels in contemplating the sickbed, and the coffin of a loved one. There *is* a difference. It has been felt and recognized by every one who has "nature in him," and will be, "as long as man has passions, as long as earth has woes." That the plaintiff would have suffered

mental anxiety had the telegram been delivered as written, affords no excuse or palliation for defendant's negligence in changing its wording, so as to wring her heart with grief as though it were for the dead.

What we have before said as to the interpretation of the message disposes of the second proposition. If the interpretation given the telegram by plaintiff was natural and reasonable, it could, of course, have been reasonably anticipated by defendant that such construction might be placed upon it by her; and it would be liable for its negligence in so changing the wording of the message, that it could reasonably and naturally be construed as it was by plaintiff, thereby causing the mental anguish suffered by her.

As to the third proposition, it will be observed that contributory negligence was not pleaded by defendant. If it thought such question was raised by the pleadings and evidence of plaintiff, it should have requested a special charge submitting such issue to the determination of the jury.

The fourth proposition is not germane to the assignment. It involves a matter of pleading which should have been raised by an exception in the court below to plaintiff's petition. It not having been presented then, it is too late to insist on it for the first time here. The same may be said as to the fifth proposition.

There is no error in the judgment, and it is affirmed.

*Affirmed.*