## WESTERN UNION TELEGRAPH CO. v. CATES. (No. 2608.)*

(Court of Civil Appeals of Texas. Amarillo. March 24, 1926.)

**1. Carriers 162, 166.**

Carrier must both plead and prove that stipulation limiting time within which to file notice of claim for damages is reasonable, and question of reasonableness is for jury.

**2. Telegraphs and telephones 73(2).**

Whether stipulation on blank on which telegram was written, limiting time to 95 days within which to give notice of claim for damages for failure to properly transmit telegram, was reasonable, *held* for jury.

**3. Telegraphs and telephones 54(7)—Stipulation limiting time for notice of claim for damages for failure to properly transmit telegram held not binding on sender, where blank containing stipulation was used without his knowledge or consent.**

Stipulation limiting time to 95 days within which to give notice of claim for damages for failure to properly transmit telegram *held* not binding on sender of message, where operator received message from sender orally, and message was written on blank containing such stipulation without sender's knowledge or consent.

**4. Negligence 48 — Employee of telegraph company held agent of company in writing message for sender and making mistake in address.**

Agent of telegraph company, in writing for sender message given verbally across counter in company's office, it being custom of employees to so receive and write messages, *held* agent of telegraph company and not of sender in making mistake in writing address of message.

**5. Telegraphs and telephones 66(4).**

Evidence of negligence of telegraph company in failing to notify sender of message of its nondelivery *held* for jury, and sufficient to support implied finding that company was negligent.

Appeal from Lubbock County Court; Charles Nordyke, Judge.

Action by W. V. Cates against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Roscoe Wilson, of Lubbock, and Wm. H. Flippen, of Dallas (Francis R. Stark, of New York City, of counsel), for appellant.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellee.

HALL, C. J. The appellee, plaintiff below, sued the telegraph company to recover damages in the sum of $1,000 for alleged negligence in failing to promptly transmit and deliver a message, and negligence in servicing it. The substance of the petition is: That on February 9, 1924, plaintiff's mother died at Goose Creek, Tex.; that A. L. Cates, his brother, sent to him at Lubbock, over the defendant's telegraph lines, this message: "Mother is dead. Arrive home three P. M. tomorrow"—which was received by the plaintiff. Upon receipt of said wire, about 4 o'clock Saturday afternoon, February 9th, plaintiff went to defendant's office in Lubbock and informed one of its employees, Alberta Johnson, that he desired to send a message to A. J. Adrian at Ben Wheeler, Tex., for the purpose of informing him that he would reach Wills Point on the train the following night, and requesting the addressee to meet him. That he informed said employee that Ben Wheeler was not on the railroad, and that Wills Point was the station at which he would get off the train to go to Ben Wheeler. That defendant accepted the message for transmission, informing plaintiff that it would have to be transmitted by telephone from Edgewood to Ben Wheeler; that said agents collected from the plaintiff $1 for transmitting and delivering the message; and that said agent reduced the message to writing at the request of plaintiff, the sender, and undertook to render the necessary service, but that defendant and its said agents were careless and negligent in handling the message, in that they erroneously spelled the name of the addressee as A. J. Evans instead of A. J. Adrian, without plaintiff's knowledge or consent, in consequence of which said negligence the message was not delivered; that they were further negligent in that they did not service such message or use ordinary care in undertaking to service the same; that as the natural and proximate result of such negligence plaintiff was prevented from attending the funeral and being present at the burial of his mother, and suffered mental anguish and damages in the sum of $1,000.

The defendant answered, charging that if there was any delay in the transmission and delivery of the message it was due to plaintiff's negligence, since the message was written by plaintiff's agent, Alberta Johnson, on a blank form furnished by defendant, but at the request and under the direction of plaintiff; that plaintiff's said agent understood the name of the addressee to be A. J. Evans; that after the message was written she read it to plaintiff, and he advised her that it was all right; that in writing said message the said Alberta Johnson was not acting as the agent of the defendant, but of the plaintiff—wherefore, the error in said message was due to the negligence of plaintiff.

Defendant further pleaded, in defense, the provision upon the blank form upon which the message was written, to the effect that in case of intrastate messages the company would not be liable for damages or statutory penalties unless the claim was presented in writing within 95 days after the cause of ac-

tion should accrue. It pleaded that said stipulation was reasonable and valid under the laws of this state, and that plaintiff did not present his written claim to the defendant until May 20, 1924, which was more than 95 days after his cause of action accrued.

By supplemental petition plaintiff, in effect, pleaded non est factum as to the written message and the printed stipulation on the back thereof, alleging that he knew nothing about such stipulation, did not authorize defendant's agent to write the message on such a blank, and never agreed to be bound by it. He further alleged, in substance, that he was not accustomed to writing messages and did not know how to get them up like they should be; that he merely told the defendant what he wished to communicate, advising defendant fully of the circumstances; and that defendant's said agent reduced the same to writing on a piece of paper; that plaintiff at that time was not able to read or write very well, and could not see very well without his glasses, and that it was the custom and duty of defendant and its clerks, under such circumstances, to write out the message, and that the clerk, in doing so, was acting as the agent of the defendant and not of the plaintiff; that the 95 days' limitation for filing the claim for damages is not, and was not, reasonable under the circumstances, in that, among other things, the plaintiff did not have a copy of the message and was unable to secure a copy from the defendant for a month or two thereafter; and that he gave notice as soon as he was able by the use of ordinary diligence to learn that he had a cause of action against the defendant.

The case was submitted to a jury upon special issues, the findings being as follows:

"(1) Plaintiff was prevented from attending his mother's funeral because of the defendant's alleged failure to use *ordinary care in* undertaking to notify the plaintiff of the nondelivery of the telegram addressed to A. J. Adrian.

"(2) Plaintiff has been damaged in the sum of $500.

"(3) Plaintiff filed, or caused to be filed, in writing, his claim for damages within 95 days after his cause of action accrued.

"(4) Ninety-five days from the date of the message was a reasonable time in which plaintiff could have filed his claim for damages in writing.

"(5) Was the plaintiff or his agent guilty of negligence in writing the message at Lubbock for transmission?    Answer: Yes.

"(6) Such negligence contributed to the failure of defendant to deliver the message."

Upon this verdict the court rendered judgment in plaintiff's favor for $500. The judgment contains this recital:

"And it further appearing that plaintiff caused to be filed his claim in writing with the defendant company for the damages sustained, as aforesaid, it is the opinion of the court that plaintiff ought to recover, etc."

From the above statement of the pleadings it will be seen that plaintiff does not base his action upon the written contract containing the stipulation with reference to notice, but sues for a breach of an oral agreement to send and deliver his message to Adrian.

The record discloses that the plaintiff had received a wire that his mother was dead. He says that he immediately went to the defendant's office with this wire in his hand and told defendant's operator that he wanted to send a message. He testified that:

Upon reaching the office "I walked up to the Western Union counter that is over there, and told them I wanted to send a telegram. She came up to the counter. She took her pencil and wrote the message for me. I did not dictate it to her; I just told her what I wanted, and she wrote it out for me. I told her I never had wrote a telegram and wanted to make it as short as possible. I didn't write the telegram, and don't think I had it in my hands. As she wrote the message she was standing on one side and I was standing on the other side of the counter, about two feet, something like that, across."

He says that the reason she wrote it was that he could not see very well without his glasses. The operator testified that it was the custom of the company's operators to write out messages for people who could not write out their own messages; that she wrote the message for plaintiff because he said he could not see well, and that—

"After writing this message for him, I reread it to him, and he didn't catch any errors in it, and did not comment on it in any way."

The message as written by her is as follows:

"We will reach Wills Point on train tomorrow night.    Meet us."

The operator did not testify that she read the name of the addressee, but only the message itself. Plaintiff says he did not know anything about what was on the back of the paper upon which the operator was writing. The defendant's employee did not have a very clear recollection of the transaction. She testified:

"I don't remember any conversation that came between myself and W. V. Cates at the time the message was given to me. It has been so long ago I don't just remember what I did say."

The plaintiff testified that he did not know that the paper upon which the operator wrote the message contained any stipulations whatever, and further said that it was his best recollection that the message was not read over to him by the operator after she wrote it. She said she thought she read it over to him. One reason he gave for believing that the message was not read to him after it was written is that it states that he would reach Wills Point on the train.

He said he had no such intention, but intended to go, and did go, from Fort Worth to Dallas on the interurban, and from Dallas to Wills Point by jitney. He further states that at the time he gave her the oral message he spelled the name of the addressee, Adrian, for her, to be sure that she would get it correct, and that he also gave her his address in Lubbock as 1605 Avenue E. The copy of the telegram introduced in evidence has that address upon it.

[1, 2] The first contention to be considered relates to the alleged failure of the plaintiff to give notice of his damages within 95 days after the cause of action accrued. When the question of notice of a claim for damages arises in a case against a common carrier, the rule is that the carrier must both plead and prove that the stipulation in the contract is reasonable, and it is further held that its reasonableness, under the circumstances, is a question of fact for the jury (St. Louis, B. & M. Ry. Co. v. Marcofich [Tex. Civ. App.] 185 S. W. 51), which holding was affirmed by the Commission of Appeals (221 S. W. 582), saying that a stipulation for 95 days' notice in the case of an intrastate shipment contract with a carrier was invalid. The rule as applied to carriers was also applied to telegraph companies in Western Union Telegraph Co. v. Timmons (Tex. Civ. App.) 136 S. W. 1169. That case also holds that the sendee of a message who is ignorant of the stipulation in the contract, and who is prevented by the fraud of the agents of the telegraph company from learning the fact, is not bound by the stipulation as to notice. The case also holds that, where the sender of the message did not know that such stipulation was in the company's blank messages, nor of the custom of the company in reference thereto, and who merely authorizes the agent to send the telegram, without authorizing him to write it on the company's blank, did not bind the sendee by any such stipulation.

It is said in Jones, Telegraph and Telephone Companies (2d Ed.) § 393:

"The length of time given in these stipulations is presumed to be reasonably long to give the injured party ample time to file its claim with the company; but if it should appear that he did not become aware of the wrong until after the expiration of the limitation and this was no fault on his part, or if he does not have a reasonable time to file the claim after he becomes aware of the company's breach of duty, or if for any reason he is unavoidably prevented from presenting his claim before the expiration of the limitation, but does so as soon thereafter as it is in his power, the stipulation is not binding. So it will be seen that every particular case must be considered with respect to its own surrounding circumstances."

In this case the defendant company introduced no testimony tending to show that the stipulation was reasonable under the circumstances. The only evidence bearing upon that issue comes from the plaintiff's side of the case. The plaintiff testified:

"After I came back from the trip I made for the purpose of attending my mother's funeral, I went down to the Western Union and asked the manager why my message wasn't sent, and he said he didn't know; so I told him I would like to know—would like to find out where the error was. So I went back in a few days and asked him again, and then he told me it was the telephone people, it was their fault it wasn't delivered, and I went back later and asked him for a copy of the telegram, and he told me they had sent it to Dallas—sent it off to some one in Dallas I think—anyway he said it had been sent to Dallas. He said he would get it for me, so I went back two or three times and asked him for it. I don't know just when he got it, but anyway he came out there where I had this pop corn machine and told me he had it in, and I went and got it then, and then I took it up to Bean & Klett's office. That was what purported to be a copy. I then turned the matter over to Bean & Klett. The first visit I made to their office to see why the telegram hadn't been delivered must have been a day or two after I came back. I stayed down there about a week after I think. The next day after I came home I went in and asked about it."

Judge E. L. Klett, one of plaintiff's attorneys, testified that about the 10th day of April, 1924, plaintiff came into his office and showed him the telegram, or a copy of it, and told him about his trouble. The firm of Bean & Klett commenced correspondence with the telegraph company with reference to the matter. The letters set out in the statement of facts show that on April 10th they wrote the office at Lubbock, insisting that they be furnished the telegram or a copy of it. The next day the manager of the company at Lubbock wrote Bean & Klett that he had requested the general offices at Dallas to return the message, and would advise them as soon as it was received. On May 20th Bean & Klett mailed to the general offices at Dallas the claim for $1,000, and on July 8th they again wrote the Dallas general offices asking for a report of the company's decision on the claim. On August 13th the general manager at Dallas wrote Bean & Klett denying liability because the claim had not been presented in accordance with the stipulation requiring written notice to be presented within 95 days after the cause of action accrued.

In deciding this issue, it is necessary to take into consideration the fact that Ben Wheeler, the home of the addressee, was an inland town and not a telegraph office; that the message would go by telegraph to Edgewood, and by phone from there to Ben Wheeler. Having been told by the defendant's manager at Lubbock that the default was with the telephone company, plaintiff was not required to file a suit against the defendant, and risk having to take a nonsuit and pay the costs, until he definitely ascertained whether the negligence was that of the telephone company or the telegraph company; so, even if

defendant had attempted to prove that the stipulation was reasonable, under the evidence above quoted, it was a question of fact for the jury.

The question of the ignorance of a plaintiff of his rights is discussed in Western Union Telegraph Co. v. Phillips (Tex. Civ. App.) 30 S. W. 494, where Judge Head, reviewing the authorities from this state and elsewhere, says that, where a part of all the time called for in the stipulation has expired before the injured party acquires knowledge of the cause of the company's default, the stipulation is not reasonable as a matter of law; and—

"Where the injured party has been deprived of a portion of the time he should have had under his contract in which to make his claim, and the evidence raises the question as to whether or not the time that remained was reasonably sufficient to enable him to present his claim within the time called for therein, we think the issue should be submitted to the jury, under appropriate instructions, to decide whether the contract was reasonable as applied to the facts of that particular case." Western Union Telegraph Co. v. Smith, 130 S. W. 622, 61 Tex. Civ. App. 531; Western Union Telegraph Co. v. Verhalen (Tex. Civ. App.) 204 S. W. 240.

[3] The appellant relies upon the case of Western Union Telegraph Co. v. Edsall, 63 Tex. 668, and others along the same line, to sustain its contention that plaintiff is bound by the 95-day stipulation. These decisions turn upon the proposition that the operator in writing the message for the sender, and at his request, is the sender's agent. In all these cases save one the message was telephoned to the agent of the telegraph company, and by him written upon blanks containing the stipulation, and in which it was held not to be binding upon the sender. Western Union Telegraph Co. v. Douglass, 133 S. W. 877, 104 Tex. 69; Western Union Telegraph Co. v. Honeycutt (Tex. Civ. App.) 250 S. W. 431; Western Union Telegraph Co. v. Uvalde National Bank (Tex. Civ. App.) 72 S. W. 232; Gore v. Western Union Telegraph Co. (Tex. Civ. App.) 124 S. W. 977; Postal Telegraph & Cable Co. v. Prewitt (Tex. Civ. App.) 199 S. W. 316; Western Union Telegraph Co. v. Armstrong (Tex. Civ. App.) 207 S. W. 592. This writer confesses his inability to understand why "distance lends enchantment to the view" the courts should take of this question,· and accordingly holds that the stipulation is not binding under the facts shown here where the operator receives the message from the sender orally, whether they are separated by a counter two feet wide, as in this case, or a telephone line two miles long or longer, and does not think these cases hold otherwise. These cases hold that such a stipulation is not binding upon the plaintiff, for the reason that the defendant's agent wrote the message as transmitted over the tele-

phone upon a blank containing such condition without the plaintiff's knowledge or consent. In the instant case plaintiff made no such contract as the stipulation evidences, nor has he ever ratified it. He sues upon an oral agreement, and his right of action cannot be defeated by the terms of a written agreement of which he was ignorant. So, even if the proof had shown that the 95-day stipulation was reasonable under the circumstances in this case, and, further, that the plaintiff knew in time which one of the companies was responsible for the failure to deliver the message, he is nevertheless not bound by a stipulation made a part of his contract without his knowledge or consent.

This brings us to the discussion of appellant's next proposition, that because Alberta Johnson, in writing the message at plaintiff's request acted as his agent, that her mistake in writing the addressee's name as "Evans" instead of "Adrian" is not chargeable to appellant as its negligence. It is true that the proposition announces the general rule as declared in the Edsall Case, supra, and other cases cited by appellant, but there are well-recognized exceptions to it. Western Union Telegraph Co. v. Hankins, 110 S. W. 539, 50 Tex. Civ. App. 513; Cordell v. Western Union Telegraph Co., 63 S. E. 71, 149 N. C. 402, 22 L. R. A. (N. S.) 540; Carland v. Western Union Telegraph Co., 76 N. W. 762, 118 Mich. 369, 43 L. R. A. 280, 74 Am. St. Rep. 394. That case is one where the message was telephoned to the company's agent, and the mistake was in the body of the message.

The Supreme Court of Michigan discussed the Edsall Case and some of the other cases cited by the appellant in its brief, saying:

"It seems to us that in the cases cited the Texas court went too far if it took judicial notice that the scope of the agent's authority did not permit him to write messages for those desiring to send them, who, from infirmity, were incapacitated from writing the same, or were, from ignorance, unable to do so. The law does not forbid such authority, nor does it make it the duty of the sender to write the message. If the rules of the company forbade it, there is nothing in the case to show that the fact was brought home to the knowledge of the patron, and the rule would have no greater force than any other of which he was ignorant. We cannot conclude, in the absence of proof, that the telegraph companies expect their operators to turn away patrons who cannot write, or that they keep telephones in their office, but do not permit their use in their business by their patrons who send and receive messages. And we are of the opinion that such use should not be altogether at the peril of the patron, or that he should suffer for mistakes made at either end of the line, merely because such are the instructions to the operator, or made the subject of a rule of which the patron has no knowledge. It woud seem more reasonable to hold such acts to be within the general scope of his authority, or, at least, hold it to be a question for a jury."

The court then holds that the operator acted as the agent of the defendant, and that the trial judge might properly have instructed the jury that he was not shown to have acted as plaintiff's agent.

[4] The record in the instant case shows that plaintiff had never written a telegram and could not write nor see without his glasses, and the company's agent, Alberta Johnson, testified that it was the custom for the employees of the company to write messages for senders who were unable to write their own messages. If the plaintiff had phoned the message in this case, instead of telling the operator across the counter what he wanted to say, it would still have been an oral message, and it is not clear why a distinction should be made in the two lines of cases as to the agency of the company's employees, nor why he is held to be the sender's agent if he makes a mistake in writing the message and is held not to be if he writes it on a blank containing the 95-day stipulation, phone or no phone. In Texas Telegraph & Telephone Co. v. Seiders, 29 S. W. 258, 9 Tex. Civ. App. 431, it is held that, if it was the custom of the employees of the company to receive for transmission messages over the telephone, then the company would be bound to send the message as received, and such is the holding in numerous cases, among them the following: Western Union Telegraph Co. v. Todd (Ind. App.) 53 N. E. 194; Markley v. Western Union Telegraph Co., 141 N. W. 443, 159 Iowa, 557; Salisbury v. Western Union Telegraph Co. (Mo. App.) 217 S. W. 551. We think the same rule should govern where the message was given verbally across the counter in the company's office, especially where it is shown, as in this case, that it was the custom of the employees to so receive them and write the messages themselves.

But regardless of what the rule may be, if the company was negligent in this case in failing to notify the plaintiff of its inability to deliver the message and thereafter to ask a better address, it would, nevertheless, be liable. The duty of a telegraph company to "service" a message, or, in other words, to use reasonable diligence to inform the sender of its inability to deliver it to the sendee, seems to be recognized and enforced by the great weight of authority, although there are some discordant notes.

[5] The evidence bearing upon this ground of negligence shows that the plaintiff, Cates, had lived in Lubbock 5½ years prior to the sending of this message; that he was crippled with rheumatism, and during a part of that time had operated a pop corn and peanut roaster; that some weeks prior to the sending of this message the defendant had delivered him a telegram from his sister at Goose Creek, Tex., notifying him that his mother was sick at that place; that he went down there and remained ten or twelve days, and had returned to Lubbock, where he had

remained about two days before he received the message notifying him of his mother's death. This message was addressed to him in care of Dr. Castleberry, who was well known in Lubbock. He received this message about 4 o'clock in the afternoon of Saturday, February 9th, and immediately went to the defendant's office in Lubbock and sent the message in question. The operator, Alberta Johnson, asked him for his street address in Lubbock, which he gave as 1605 Avenue E, which she wrote upon the blank. This address was three blocks south and four blocks east of the Western Union office. He then went to the bank and got the money necessary to pay his expenses for the trip, and left Lubbock at 1:45 that night over the Santa Fé Railway for Sweetwater, where he changed cars for Fort Worth over the Texas & Pacific Railway. He remained in Sweetwater a little over 2½ hours. Upon reaching Fort Worth he took the interurban train to Dallas and on to Wills Point, and from Wills Point hired a jitney to Edgewood. He left his family, consisting of his wife and three boys, at Lubbock.

It appears from the testimony of the employees and officers of the defendant company that the defendant's office hours at Lubbock are from 7 a. m. until 10 p. m. except on Sundays, when the office hours are from 8 a. m. to 10 a. m., and from 4 p. m. to 6 p. m. The message in question was received in Edgewood at 4:47 p. m. on Saturday, requiring 17 minutes in transmission from Lubbock to Edgewood. Thirty minutes after it was received at Edgewood the operator there put in a long distance call for the addressee at Ben Wheeler. According to an officer of the company the message was not serviced back to Lubbock until 9:20 that night, or 40 minutes before the office closed at Lubbock. This officer admits that there is nothing to indicate that any action was taken towards servicing the message between 5:12 p. m., when the long distance call was lodged with the telephone company, and 9:20 that night, and nothing further done until the next day, when the message was filed as unknown and a copy mailed to the addressee. This officer also admits that the operator at Edgewood had from 4:47 p. m. on Saturday until 10 o'clock that night to report its nondelivery back to Lubbock, and that no effort was made to service it back until 9:20 that night.

The plaintiff testified that he had been in the office of the Western Union before and had talked to Alberta Johnson three or four times about his mother's sickness and regarding the telegrams he had previously sent and received concerning the matter.

In Western Union Telegraph Co. v. Hicks (Tex. Civ. App.) 253 S. W. 565, it is held that the duty of a telegraph company to notify the sender of its failure to deliver the message impliedly arises under the terms of the contract, citing Western Union Telegraph Co. v.

Conder (Tex. Civ. App.) 138 S. W. 447; Western Union Telegraph Co. v. Saxon (Tex. Civ. App.) 138 S. W. 1091; Western Union Telegraph Co. v. Martin (Tex. Civ. App.) 191 S. W. 192. To the same effect is the holding in Western Union Telegraph Co. v. Erwin (Tex. Civ. App.) 147 S. W. 607; Johnson v. Western Union Telegraph Co., 87 S. E. 993, 171 N. C. 130; Jones v. Western Union Telegraph Co., 85 S. E. 370, 101 S. C. 181, Ann. Cas. 1917C, 543; Sturtevant v. Western Union Telegraph Co., 84 A. 998, 109 Me. 479; Western Union Telegraph Co. v. Ryan, 90 So. 793, 206 Ala. 511. Upon the same question there is an exhaustive note to section 291, Jones on Telegraph and Telephone Companies (2d Ed.), and another in 17 A. L. R. 109–119.

We think by the use of reasonable diligence the operator at Edgewood might have discovered that no such party as A. J. Evans resided at Ben Wheeler, which seems to have been a small inland village, within the time intervening between 4:47 p. m., when he received the message, and the time when the defendant's office closed at Lubbock at 10 p. m., and that the fact of its nondelivery could have been communicated to plaintiff or members of his family at their home seven blocks away, or even to plaintiff himself while on the train en route. Plaintiff was in Lubbock for more than six hours after defendant knew, or could have known by the use of reasonable diligence, that the addressee could not be found before the office at Lubbock closed. This was a question of fact for the jury, and, since it was not submitted to the jury, the evidence is sufficient to support the implied finding of the court that defendant was negligent in not servicing the message, and to sustain the judgment, regardless of the other issues hereinbefore discussed.

While the jury found that plaintiff was guilty of contributory negligence—a finding which we are not able to approve—nevertheless, it can have no bearing upon this branch of the case.

The original opinion is withdrawn. The motion for rehearing is overruled, and the judgment is affirmed.