HANCOCK v. TELEGRAPH CO.

(Filed March 8, 1905).

*Telegrams, How Interpreted—Mental Anguish—Instructions.*

1. If a telegraph message is delivered to the company in one State to be transmitted by it to a place in another State, the validity and interpretation of the contract, as well as the rule measuring the damages arising upon a breach and the company's liability therefor, are to be determined by the laws of the former State where the contract originated.

2. In an action to recover damages for mental anguish, a charge that "the damages are such as the jury shall find the plaintiff has suffered from 'disappointment and regret' occasioned by the fault of the company" is erroneous.

137——32

3. Where a telegram to the father announced the death of his son and named the hour of arrival, in the absence of any evidence to prove that the father could and would have met the sender promptly and would have had all arrangements made for the interment, it is error to instruct the jury that they might presume the father would do these things.

ACTION by H. S. Hancock against Western Union Telegraph Company, heard before *Judge W. B. Council* and a jury at the November Term, 1904, of the Superior Court of CRAVEN County.

This was an action for damages on account of mental anguish. The Court submitted the following issues: 1. "Did the defendant negligently fail to transmit and promptly deliver plaintiff's telegram as alleged in the complaint?" Ans. "Yes." 2. "What damages has plaintiff sustained by reason of defendant's non-delivery of such telegram?" Ans. "$300." From the judgment for the plaintiff, the defendant appealed.

*W. D. McIver,* for the plaintiff.
*F. H. Busbee & Son* and *W. W. Clark,* for the defendant.

BROWN, J. We gather from the record these facts: The plaintiff and his brother resided in North Carolina and their father S. M. Hancock at New Church, Va. The family burial ground is Goodwill Cemetery in Maryland, eight or ten miles from the father's home. Its nearest depot is Pocomoke City, Maryland, four and a half miles away. New Church and Pocomoke City are about eleven or twelve miles distant. On Saturday, July 11, 1903, the plaintiff was at Johns Hopkins Hospital, with his brother, Thomas, and his wife. Thomas had gone there for an operation, under which he died. At the defendant's office in the hospital, about 6 P. M. Saturday, the plaintiff filed a telegram as follows:

"S. M. HANCOCK, New Church:

"Thomas dead.   Will arrive at Pocomoke 3 A. M.

"H. S. HANCOCK."

This telegram was not delivered until Monday, 13th. ·There being no earlier train, the plaintiff, with his brother's body and the widow, arrived at Pocomoke City Monday morning a half hour late, at 4 o'clock.   A storm prevailed which prevented the plaintiff leaving the train until 6:30 A. M. There was no one to meet him and no preparation had been made for the burial.   The plaintiff again telegraphed by the Postal Company to his father, who arrived between 9 and 10 A. M.   Preparations were made and the interment took place about 5 P. M.

1. The contract in this case was made in Maryland, and the contracting parties are presumed in law to have had in contemplation only such damages arising from the breach of it as could be awarded under the law of Maryland at the date of the telegram.   In this case the sender was in Maryland at the time he filed his telegram.   The sendee was in Virginia.   The defendant, we judge by depositions in the record, was under the belief that the law of Virginia in some way affects this contract.   The law of Virginia has no relation to it.

If a telegraphic message is delivered to the company in one State to be transmitted by it to a place in another State, the validity and interpretation of the contract, as well as the rule ˙measuring the damages arising upon a breach and the company's liability therefor, are to be determined by the laws of the former State where the contract originated. *Bryan v. Tel. Co.,* 133 N. C., 607, citing *Reed v. Tel. Co.,* 58 Am. St. Rep. (Mo.), 609.   If under the law of Maryland, as interpreted and expounded by its highest court, damages

on account of mental anguish, not connected with or grow-ing out of a physical injury to the plaintiff's person, could not be awarded, then the plaintiff in this action can recover only the cost of the telegram and costs. Where, as on the trial had in this case, the defendant relied upon the testimony of an attorney at law in Maryland, who testified by deposi-tion as to what he believed the law of that State to be, the Court very properly submitted to the jury the testimony to be passed on by them as to its credibility and value. If the jury render a verdict in any case contrary to the clear weight of the evidence, the remedy is, and it is the duty of the trial Judge, to set it aside, but we cannot ordinarily review the exercise of such power. Possibly the jury were not satisfied from the deposition of the attorney (Mr. Cross) as to what is the law of Maryland. The defendant will have an opportu-nity on the next trial to further enlighten the Court and jury more specifically upon the law as to the proper measure of damages for mental anguish, as it is administered in Maryland.

2. The Judge among other things charged the jury that "upon the question of damages the message upon its face dis-closing its urgency and relating to death, the defendant had notice that a failure to deliver might reasonably cause men-tal anguish to the sender, and in such case the damages for mental anguish are such damages as the jury shall find the plaintiff has suffered from disappointment and regret occa-sioned by the fault or neglect of the company in its failure to notify the sendee, in order that preparations and arrange-ments might be made for the reception and interment of the body." The Court erred in using the words "disappointment and regret." There is a very material difference between the significance of those words and that keen and poignant mental suffering signified by the words "mental anguish."

The right to recover damages for purely mental anguish, not connected with or growing out of a physical injury, is the settled law of this State and it is too late now to question it. Our authorities are up to this time uniform and unanimous as to the general doctrine. Differences of course arise as to its application in particular cases. *Young v. Tel. Co.,* 107 N. C., 370, to *Hunter v. Tel. Co.,* 135 N. C., 459. The language used in nearly all the cases in this and other States where such damages are allowed is "grief and mental anguish."

We do not find anywhere that damages are allowed for "disappointment and regret." The lexicographers define anguish to be "intense pain of body or mind." It is derived from the Latin word *anguis,* a snake, referring to the writhing or twisting of the animal body when in great pain. Stormouth's Dict. *Mr. Justice Douglas,* speaking for the Court, said: "We use the word 'anguish' as indicating a high degree of mental suffering, without which the plaintiff could not recover substantial damages. Mere disappointment would not amount to mental anguish or entitle the plaintiff to more than nominal damages." Hunter's case, 135 N. C., 459. The addition of the word "regret" by his Honor does not help the matter. Regret indicates no greater degree of mental suffering than does disappointment. Both are of very frequent occurrence in the lives of most men, and with some scarcely disturb their mental poise. In this connection we desire to supplement what was said by *Judge Douglas* in Hunter's case, as to what particular mental anguish is to be considered by the jury in awarding damages. Jurors may possibly confound the mental anguish, naturally arising from the loss of a near relative, with that which grows out of the defendant's negligence. The jury have no right to consider anything except the latter in awarding damages.

We commend to the careful consideration of the Superior Court Judges the language of the opinion in the Hunter case upon that subject, and that they explain the law in reference thereto with great care to the juries, whether requested to do so or not, lest injustice be done the defendant by confounding the natural grief at the loss of a near kinsman with that anguish which is claimed to result from the negligence of telegraph companies.

3. The Judge charged the jury that they might consider the failure of the father to arrange for the interment of the deceased, if they should find from the evidence that such arrangements would naturally be presumed to have been made by the sendee, if the telegram had been delivered prior to the arrival of the train on Monday. It is plain that the plaintiff has no cause for complaint that his father did not meet the 3 A. M. train Sunday, for the plaintiff did not arrive until Monday at 4 A. M. The only contention the plaintiff makes is that if the telegram had been delivered with reasonable promptness, his father would have met him promptly on Monday morning and would have had all arrangements made for the interment, so that it would not have been delayed from about 10 A. M. until 5 P. M. Monday, in consequence of which delay the plaintiff avers he suffered great mental anguish, and claims damages on that account. The plaintiff must therefore prove that his father could and would have met him promptly on Monday morning on arrival of the train at 4 o'clock, and that he could and would have made on Sunday, or prior to the plaintiff's arrival, all necessary arrangements for the prompt interment of his brother's body on Monday morning and avoided the delay in the obsequies from 10 A. M. until 5 P. M., thereby saving the plaintiff from the pangs of mental anguish which he avers he endured.

The law does not presume that the father could have done

these things. Many contingencies, such as illness, absence from home, inability to get the work done on Sunday, may have prevented, however willing the father may have been to discharge such a parental duty. There was no evidence tending to prove such facts and the jury had no right to presume them. In Bright's case, 132 N. C., 326, *Justice Walker* says, referring to defendant's objection to the testimony of Cooper, the addressee, that he would have gone to Wilkesboro had he received the telegram, that the testimony was not only competent but indispensable, and uses the following language: "We are unable to understand why this is not competent; it tended to prove the very fact which the defendant, in the last exception considered by us, asserted it was necessary for the plaintiff to prove in order to recover substantial damages, and it was necessary to prove this fact if the plaintiff sought, as she did by her complaint and evidence, to recover damages for mental anguish which resulted from his failure to go to Wilkesboro."

As there is to be a new trial, it is unnecessary to consider the defendant's further exceptions. They relate to alleged errors that may not again occur.

New Trial.