James C. SHEPHERD, Appellant,

v.

EAGLE LINCOLN MERCURY,
INC., Appellee.

No. 4886.

Court of Civil Appeals of Texas,
Eastland.

April 1, 1976.

Ronald G. McDearman and Carl E. Roberts, McDearman, Lair, Ballas & Sands, Dallas, for appellant.

Seferino Dominguez, Blassingame, Osburn & Dominguez, Dallas, for appellee.

WALTER, Justice.

James C. Shepherd filed suit against Eagle Lincoln-Mercury, Inc., for damages for not correctly disclosing the mileage on the odometer of a used 1972 Lincoln Continental. Judgment was rendered non obstante veredicto for defendant and plaintiff has appealed. He contends the court erred in rendering judgment for the defendant because there is some probative evidence to support the verdict.

The jury found Eagle misrepresented the mileage on the car; that such misrepresentation was a material and substantial fact; that plaintiff relied on such misrepresentation; that plaintiff suffered a monetary loss; that the amount of such loss was $2,250.00; that Eagle executed a disclosure form indicating mileage on the car of 8,280; and, that the car had more miles than indicated on the disclosure form.

We find appellant's statement of the facts accurate. He relates them as follows:

"This is a general fact statement pertinent to all points, giving the background of the transaction made the basis of this suit and the jury findings. Because the facts appear to be undisputed, they will be set out in one narrative.

The basis of this suit is a consumer transaction in which James C. Shepherd is the buyer and Eagle Lincoln-Mercury, Inc. is the seller of a 1972 Lincoln Continental Mark IV automobile. On June 7, 1973, Plaintiff went to the Defendant's place of business and was shown the automobile in question. The Plaintiff decided to buy the car and entered into an installment sales contract with Defendant

for the installment price of $9,559.24. At the time of purchase Plaintiff was given an odometer disclosure statement by an agent of the defendant which showed the make, model, and year of the vehicle as well as stating that the car's true mileage was 8,280 miles.

Within two months of this purchase by plaintiff, major repairs were required by the automobile. Mr. Shepherd then wrote to Ford Motor Company inquiring into the history of the car and received a reply from the Ford Company which stated that on May 8, 1972, warranty repair work had been done on the Lincoln and that the mileage at that time had been recorded as 10,100 miles. Subsequently, the plaintiff returned the car to the defendant's place of business.

The defendant had purchased the Lincoln Continental Mark IV from Bob Queen Used Cars, Haskell, Oklahoma and had received an odometer disclosure statement from Queen which stated that the Lincoln had accumulated 8,226 miles. The defendant's used car manager stated that he had been in the automobile business for approximately twelve years and that he had personally inspected the Lincoln carefully and authorized its purchase from Queen. He also stated that he had never done business with Bob Queen Used Cars before this time."

15 United States Code Annotated,

## "SUBCHAPTER IV.—
## ODOMETER REQUIREMENTS

§ 1981. Congressional findings and declaration of purpose

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers.

§ 1982. Definitions

As used in this subchapter—

(1) The term 'odometer' means an instrument for measuring and recording the actual distance a motor vehicle travels while in operation; but shall not include any auxiliary odometer designed to be reset by the operator of the motor vehicle for the purpose of recording mileage on trips.

(2) The term 'repair and replacement' means to restore to a sound working condition by replacing the odometer or any part thereof or by correcting what is inoperative.

(3) The term 'transfer' means to change ownership by purchase, gift, or any other means.

§ 1983. Unlawful devices causing odometer to register mileage other than true mileage driven

It is unlawful for any person to advertise for sale, to sell, to use, or to install or to have installed, any device which causes an odometer to register any mileage other than the true mileage driven. For purposes of this section, the true mileage driven is that mileage driven by the vehicle as registered by the odometer within the manufacturer's designed tolerance.

§ 1984. Unlawful change of mileage indicated on odometer

It is unlawful for any person or his agent to disconnect, reset, or alter the odometer of any motor vehicle with the intent to change the number of miles indicated thereon.

.    .    .    .    .

§ 1988. Disclosure requirements upon transfer of ownership of motor vehicle; promulgation of rules; violations

(a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe

rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained.

(b) It shall be a violation of this section for any transferor to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure required by such rules.

§ 1989. Civil actions to enforce liability for violations of odometer requirements; amount of damages; jurisdiction; period of limitation

(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) An action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises."

Texas Business and Commerce Code Annotated, § 17.41–17.45:

"§ 17.41. Short Title

This subchapter may be cited as the Deceptive Trade Practices-Consumer Protection Act.

.     .     .     .     .

§ 17.44. Construction and Application

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

§ 17.45. Definitions

.     .     .     .     .

(9) 'Knowingly' means actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

§ 17.46. Deceptive Trade Practices Unlawful

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

.     .     .     .     .

(16) disconnecting, turning back, or resetting the odometer of any motor vehicle so as to reduce the number of miles indicated on the odometer gauge;

.     .     .     .     .

(c) It is the intent of the legislature that in construing Subsection (a) of this section the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C.A. 45(a)(1))."

Shepherd pleaded he purchased the car from Eagle and was delivered a disclosure form showing 8,280 miles on the odometer and the car had more miles than the disclosure form indicated.

He pleaded Eagle altered or caused the odometer to be altered.

In the alternative he pleaded Eagle turned back the mileage on the odometer and it should have known it did not indicate the correct mileage; that Eagle misrepresented this material and substantial fact to deceive and induce him to purchase the car; that he would not have purchased the car had he known the true mileage and that such fraudulent representations were calculated to deceive him and he suffered damages.

■ Eagle purchased the car from Bob Queen Used Cars, Haskell, Oklahoma and the disclosure statement from Queen disclosed 8,226 miles. The disclosure statement from Eagle to Shepherd showed 8,280 miles. These facts are not disputed. These facts present no evidence Eagle violated any of the provisions of the Federal Statute.

Appellant relied on *Delay v. Hearn Ford*, 373 F.Supp. 791 (U.S.Dist. Court 1974). Delay traded a 1967 Chevrolet in on a 1973 Ford on December 23, 1972. He was not satisfied with his Ford and Hearn Ford replaced it with a second new Ford which also proved unsatisfactory. He sold the second Ford to Jones, the used car manager at Hearn Ford and on January 19, 1973, repurchased the same 1967 Chevrolet which he had traded in originally. Soon thereafter, Delay discovered the odometer read less than 49,000 miles. There was evidence that at the time Delay traded his Chevrolet to Hearn Ford his odometer read at least 65,-000 miles. The defendant's motion for summary judgment was denied because the summary judgment proof created issues of fact.

The *Delay* case is distinguished from the case at bar because Hearn Ford had possession of the 1967 Chevrolet from the time Delay traded it to them until Delay repurchased the car.

■ There is no evidence to support a judgment that Eagle altered or caused the odometer to be altered under the State statute and these issues were not submitted.

■ Shepherd relied on his alternate pleading of actionable fraud. The jury found Eagle misrepresented the mileage, this was a material fact, that Shepherd relied on same and suffered damages.

In *Oilwell Division, United States Steel Corporation v. Fryer*, 493 S.W.2d 487 (Tex. 1973), the court said:

". . . While generally speaking, to establish fraud there must be a finding of a false representation (which we do not have here under the jury's findings), our opinion need be based, as it is based, only on the negative answer to special issue number 3 where the jury answered 'no' to the question, 'Do you find that the representation was made for the purpose of inducing Fryer to sign the guaranty agreement?' That is not an immaterial finding but is one of the necessary elements of fraud as set out in *Wilson v. Jones*, 45 S.W.2d 572 (Tex.Com.App.1932). That opinion states at page 573:

'The authorities announce the general rule that to constitute actionable fraud it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. . . . Each of these elements must be established, . . . and the absence of any one of them will prevent a recovery.' "

Appellant does not have findings on all of the elements of actionable fraud.

We have examined all points of error and find no merit in them.

The judgment of the trial court is affirmed.