James E. CANTRELL et ux., Appellants,

v.

FIRST NATIONAL BANK OF
EULESS, Appellees.

No. 17868.

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 17, 1977.

Rehearing Denied Jan. 5, 1978.

Staples & Foster and Ross T. Foster, Hurst, for appellants.

Elvin E. Tackett, Bedford, for appellees.

## OPINION ON MOTION FOR REHEARING

MASSEY, Chief Justice.

Our opinion dated September 22, 1977, is withdrawn, with the following substituted therefor.

James E. Cantrell and wife, hereinafter referred to in the singular as Cantrell, brought suit for damages and penalties allegedly applicable against the First National Bank of Euless, hereinafter referred to as Bank. Averred were two separate causes of action.

Following trial to a jury, with verdict returned, the trial court disregarded answers of the jury applicable to Cantrell's claim under the Texas Business and Commerce Code, Title 2, "Competition and Trade Practices," Subchapter E, "Deceptive Trade Practices and Consumer Protection," § 17.41 et seq., the Deceptive Trade Practices—Consumer Protection Act. By the court's judgment all the relief sought by Cantrell in this cause of action was denied.

Based upon the verdict of the jury as otherwise to be considered, the trial court rendered a judgment granting Cantrell relief which he deemed unsatisfactory and insufficient. The cause of action upon which this judgment was predicated was by the provisions of V.A.T.S. Title 79, "Con-sumer Credit," Chapter 4, "Installment Loans," Art. 5069–4.01, "Installment loans authorized" and Art. 5069–4.03, "Lender's duty to borrower"; and Chapter 8, "Penalties," Art. 5069–8.01, "Contracting for, charging or receiving interest, time price differential or other charges greater than authorized." Additionally, the cause of action upon which this judgment was furthermore predicated was by the provisions of U.S.C.A., Title 15, "Commerce and Trade," Chapter 41, "Disclosures," Part B, "Credit Transactions," § 1631, et seq.

Cantrell appealed. The Bank filed a cross-appeal.

We affirm judgment of the trial court denying relief upon Cantrell's cause of action predicated upon provisions of the Texas Business and Commerce Code. We sever therefrom and in part reverse and render and in part and with severance reverse and remand for purposes of trial of attorney's fees the judgment as applied to Cantrell's other causes of action.

## HISTORY

In June of 1973 Cantrell found himself with a new son-in-law, one Caballero. Caballero was a photographer by trade, and his work consisted in taking children's photographs at stores in different metropolitan areas. Such work necessitated very frequent moves from city to city. For a month or so the young couple used an automobile and stopped at motels, eating at restaurants. The idea was conceived that if they had a motor home they could make the frequent necessary moves, have living quarters in the motor home, where their meals could also be prepared, with the result a substantial saving. Caballero did not have the necessary financial means by which such a motor home could be purchased.

Cantrell was approached with the problem. By his arrangement with the Bank the financing necessary to purchase the desired motor home was accomplished. In addition to $1,000.00 required as part of the down-payment on the purchase of the desired motor home, an additional amount of

$8,000.00 was borrowed on the strength of Cantrell's credit. Cantrell's loan transaction with the Bank was accomplished on August 14, 1973.

Without question, at least $2,000.00 of the entire amount of approximately $3,500.00 in Cantrell's savings account with the Bank was agreed to be "frozen" and not withdrawn from the Bank as security in addition to that of the Bank's mortgage on the motor home. It is obvious that Cantrell shared the common belief of most motor vehicle purchasers that in the event there was a repossession by the lender on the strength of the mortgage all reciprocal obligations would come to an end and nothing would be thereafter owed by or to the lender. Cantrell did understand that if and in the event of repossession the $2,000.00 "frozen" in his savings account would become the Bank's if that much should be required to make up any deficiency in the event of a foreclosure. What he did not understand was that either by the law or by his contract with the Bank he could be personally liable for any excess in amount above the $2,000.00 pledged and "frozen" as additional security.

Caballero made the first of the contracted 59 payments in the amount of $189.55 (on the total of $11,375.00 agreed indebtedness to the Bank ultimately to accrue) approximately ten days after it became due. Subsequent payments, also late, were made by Cantrell in the form of agreed transfers of amounts out of the excess in his savings account above the "frozen" $2,000.00. During the period intervening prior to foreclosure Cantrell did use for his own purposes the excess in his savings account above the $2,000.00 which was "frozen". Within a very few weeks the Caballeros had financial and marital difficulties. The young couple separated and the motor home was parked at Cantrell's premises in Tarrant County where it remained for some further weeks until, in part because of Cantrell's request, there was repossession by the Bank on February 26, 1974. At such time there was an installment owing on Cantrell's note which was eleven days overdue.

Following repossession, the Bank had repairs done to the motor home and undertook the expense to sell the same at private sale for $5,200.00. There is no attack upon the propriety of sale for such amount nor upon the Bank's computation that, after application of all credits, including the entire amount in Cantrell's savings account, it sustained a loss of something under $100.00 (i. e., the Bank's loss under its entitlement had it been fully paid what it was due on Cantrell's note). The Bank did not sue to recoup its loss, apparently having "written it off as a bad debt."

In making application to the retirement of Cantrell's indebtedness the Bank took not only the "frozen" $2,000.00 in Cantrell's savings account, but it also took the remainder thereof in the sum of $1,234.44.

Part of the litigation here involved (under the Business and Commerce Code) was born in the Bank's transfer, on April 4, 1974, of the $1,234.44 out of the Cantrell savings account. Cantrell deemed himself aggrieved, indeed believing that the Bank had contracted with him not to demand or take anything from him over and above the agreed amount of $2,000.00. On this, however, Cantrell predicated no part of his complaint. There was no pleading or evidence tending to prove that the Bank had thus contracted or which sought to reform the contract to provide as Cantrell believed.

## ON THE BANK'S MOTION TO DISMISS THE APPEAL

■ One ground of the Bank's motion to dismiss is the failure of Cantrell to file any motion for new trial as a predicate for his appeal from judgment in a case tried by jury. Cantrell had no need to file any motion for new trial. What he desired of the trial court by his motion for judgment in the case was that he deemed his entitlement by the jury's verdict. What he seeks by his appeal is a rendition of a judgment on the verdict. In this situation there is no requirement that Cantrell have filed any motion for new trial as predicate for appeal.

Another ground of the Bank's motion to dismiss is by reason of the language of the judgment from which the appeal was perfected. The Bank contends that there has been no final judgment to be appealed. The language in the judgment upon which the Bank relies reads, as follows: "IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that JAMES E. CANTRELL and Wife, LAVERNE CANTRELL, Individually and as Assignee of John P. Caballero, do have and recover of and from the Defendant, FIRST NATIONAL BANK OF EULESS, the sum of $2,000.00, *provided Plaintiffs file a remittitur of any greater amount claimed by them on Plaintiffs' Attorney's Fees.*" (Emphasis supplied.) The instrument in which the language is found was labeled "Judgment," and was "signed and rendered" by the court in its official capacity. The contention of the Bank is without merit and its motion to dismiss the appeal is overruled.

On what is above last written we hold that the trial court's act was entry of a final and appealable judgment and that the language "provided Plaintiffs file a remittitur of any greater amount claimed by them on Plaintiffs' Attorney's Fees" is surplusage and meaningless. The ministerial act of entry of a final judgment was accomplished in this case. It was not a mere interlocutory judgment because there was not left for future determination some material question connected with it. It would have been fatal to Cantrell's appeal to have treated it as interlocutory; it was a final and appealable judgment. *State v. Starley,* 413 S.W.2d 451 (Tex.Civ.App.—Corpus Christi 1967, no writ history).

## ON THE PART OF THE JUDGMENT AFFIRMED

The Deceptive Trade Practices—Consumer Protection Act, Texas Business and Commerce Code under Title 2, "Competition and Trade Practices," § 17.41, et seq., provides by § 17.50, "Relief for Consumers" that a consumer (including an individual who acquires any goods or services by purchase) has a cause of action he may maintain if he has been adversely affected by: "(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter; . . . (3) any unconscionable action or course of action by any person; . . . ." If he prevails by his suit he may obtain: "(1) three times the amount of *actual damages* plus court costs and attorneys' fees reasonable in relation to the amount of work expended; . . . ." (Emphasis supplied.)

Quoting from § 17.46, "Deceptive Trade Practices Unlawful," is found provision that "The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; . . . ." Under § 17.46 there are many more unlawful actions specified, but (12) appears the only one of these which could possibly have application to Cantrell's case. Neither do we perceive how (12) has application. It is only by a distortion of the facts to which there was testimony in the case—directed and intended to constitute proof of the Bank's misrepresentation relative to limitation of Cantrell's security liability in the event it became necessary to foreclose upon the motor home and the $2,000.00 in his savings account—that the answers of the jury which were disregarded by the trial court would find support.

The disregarded answer to Special Issue No. 3 was the affirmative answer of the jury to the question: "Do you find from a preponderance of the evidence that Everett Pelton [agent for the Bank] represented to James E. Cantrell that only $2,000 of his savings account was being assigned as security for the loan?"

As a matter of fact the evidence in the record is conclusive that only $2,000.00 of Cantrell's savings account was assigned as security. Cantrell understood this and so did the Bank. It was the $2,000.00 which was "frozen". The remainder of Cantrell's savings account was his own, and he did

make withdrawals therefrom so that as of the time of the Bank's foreclosure there was an excess (above the "frozen" $2,000.00) of only the $1,234.44. The time of the purported conversion (and we hold there was no actual conversion by the action of the Bank) would have had no necessary relation to the time the loan was made to Cantrell unless there was in fact a contract by the Bank that in the event of foreclosure it would not reduce to possession and application upon Cantrell's debt any remainder in Cantrell's savings account. (By the evidence in the case there was no such contract.)

■ Noted is that there was no special issue submitted to the jury inquiring whether the Bank had thus contracted, so that its seizure of the remainder in Cantrell's savings account would constitute a breach of the parties' contract; indeed there was nothing in Cantrell's pleadings for any reformation of the parties' contract to make it conform to one of such character. Apart from any necessity for reformation of the contract the jury's answer to Special Issue No. 3 did not, in and of itself or in combination with the answers to Special Issues Nos. 4 and 5, constitute a basis for his recovery. The court properly disregarded the jury's answers to all three issues.

Special Issue No. 4, conditioned upon affirmative answer to the preceding issue, inquired whether the representation that only $2,000.00 of Cantrell's savings account was being assigned as security for the loan by the Bank was a deceptive trade practice.

Special Issue No. 5 inquired what was the amount of Cantrell's damages. That the jury did attempt by its answers to both to find for Cantrell was nevertheless ineffective.

■ Furthermore, apart from consideration of any inadequacy in Cantrell's special issues, the situation could not have supported suit by Cantrell for damages. In the eyes of the law he could not have sustained any common law damages. He merely paid an amount to the Bank justly owing by him

and no more. To require redelivery of any part of the $1,234.44 to Cantrell without honoring the Bank's entitlement to have his indebtedness paid would be to unjustly enrich him at the expense of the Bank. There was no statutory exemption applicable to the $1,234.44. Upon foreclosure the Bank was in position of a lender holding money of his borrower whose matured indebtedness was of greater amount than that which was held. The indebtedness in this case matured by foreclosure upon the security of Cantrell to the extent of the deficiency remaining owing by him to the Bank. To the extent of the deficiency it was lawful that the Bank take and apply thereto that which it had been theretofore holding for Cantrell; when it did so no right of action accrued because thereof.

Stated in the negative: An action for money had and received, although one at law, is equitable in its nature, and action to recover such may not be maintained by one person against another unless in equity and good conscience such other ought to pay it over. 6 Tex.Jur.2d, the section entitled "Assumpsit," and especially p. 551, § 6, "Money had and received." See also 14 Tex.Jur.2d, p. 51, "Conversion," § 51, "Creditors and levying officers."

■ We hold that the *actual damages* meant by Texas Business and Commerce Code, in the aforementioned § 17.50, are common law damages only. Any right of Cantrell because of some statutory right to damages would not be proper to be considered.

■ To be remembered is that Cantrell, not having established right to recover damages by the provisions of § 17.50 of the Business and Commerce Code, would not be entitled to any attorney's fees. The Bank, not being obligated to pay damages to Cantrell, would be under no obligation to pay him any attorney's fees under the Deceptive Trade Practices—Consumer Protection Act, § 17.41, et seq., of the Business and Commerce Code.

The take nothing judgment on this cause of action is affirmed.

## ON THE PART OF THE JUDGMENT REVERSED

By the jury's answer to Special Issue No. 2 it was found that the Bank failed to deliver a copy of the promissory note and security agreement to either Cantrell or his son-in-law Caballero on August 14, 1973, when it was executed. It was upon this finding that the trial court rendered judgment for Cantrell for $2,000.00, one-half as damage (or penalty) and one-half as attorney's fee for successfully establishing his right to recover from the Bank under statutory provision of federal law. By cross point the Bank complains of this judgment and our holding is that the Bank's complaints are without merit. But the principal complaint thereof is by Cantrell because so small amount was awarded in that he was entitled to additional damages (apart from attorney's fee) by the provisions of state law. In his complaint we find merit and occasion for reversing the trial court's judgment as applied to this cause of action. He also complains because of the limited award of attorney's fees (referring to stipulations with opposing counsel). On this there is occasion for reversal—solely because of our action reversing the trial court in the other aspect and because on the retrial there might be a different damage (or penalty) amount to which the trial court would be required to give consideration in fixing attorney's fees. On the matter of attorney's fee, more will be written later.

In effect on August 14, 1973, the time Cantrell effected a loan from the Bank, were the provisions of federal law, U.S.C.A. Title 15, "Commerce and Trade," Chapter 41, "Disclosures," Part B, "Credit Transactions," § 1631, et seq. It was not until some time after August 14, 1973 that Texas, in attempt to bring state law into conformity, obtained near-identical statutory provisions to those in the United States Code by enactment of V.A.T.S. Arts. 5069–14.01, et seq., under Title 79, "Interest." Thereunder by Art. 5069–14.11 was provided the requirement of disclosure upon extensions of credit to a borrower which was generally otherwise provided to be made by U.S.C.A. § 1638, "Sales not under open end credit

plans—Required disclosures by creditor." Both require—by construction applicable to this case—that the Bank deliver Cantrell a copy of the note and security agreement, subject to penalty upon the Bank, if it failed to do so, of twice the amount of the finance charge, except that the liability should be not less than One Hundred Dollars nor greater than One Thousand Dollars, plus reasonable attorney's fee as determined by the court trying the case. U.S. C.A. § 1640; Art. 5069–14.19.

However, on August 14, 1973, V.A.T.S. Arts. 5069–14.01, et seq., and Art. 5069–14.-19 were not a part of Texas law. At that time statutes which had application were to be found under V.A.T.S. Title 79, "Interest" provisions under Chapter 4, "Installment Loans," Art. 5069–4.01, "Installment loans authorized" and Art. 5069–4.03, "Lender's duty to borrower"; and Chapter 8, "Penalties," Art. 5069–8.01, "Contracting for, charging or receiving interest, time price differential or other charges greater than authorized." Therein were provisions relative to the obligation of the lender to make the disclosure which the jury found not to have been made in the instant case (upon the finding that Cantrell was not delivered copy of the note and security agreement), with the applicable "penalty" for non-delivery by Art. 5069–8.01 the forfeiture by the lender to the borrower the calculable sum which would be equal to twice the amount of interest or time price differential and default and deferment charges contracted for, or charged or received, plus reasonable attorney's fees fixed by the court. Thereby was furthermore provided that there should be no penalty for a violation which results from an accidental and bona fide error. However, existence of accidental and bona fide error in the Bank's failure of disclosure was not an issue in the instant case.

■ Noticed is that on August 14, 1973, the limitation of the federal law in Title 15, Chapter 41, Part B, § 1640 to One Thousand Dollars and reasonable attorney's fee as the penalty to be imposed in favor of the borrower as against the lender did not limit

Cantrell's recovery for there might additionally be imposition of the penalty provided by Texas law; by the latter was limitation only by computation of double the amount of interest contracted, etc. There was no provision either in the state or federal law that rights thereby provided should be exclusive.

However, on August 14, 1973, there were provisions in applicable federal law which provided that there were instances where transactions of which there might be complaint were "exempted transactions"; specifically in that the rules whereby penalties were provided would have no application to certain kinds of transactions. 15 U.S.C.A. § 1603, "Exempted transactions," provided that federal law of Subchapter 1, "Consumer Credit Cost Disclosure," of Chapter 41, "Disclosures—Generally," should not have application to "credit transactions involving extensions of credit for business or commercial purposes."

Of the foregoing the Bank seeks advantage. Its contention in a cross-point is that as a matter of law the evidence in the case compelled the holding that Cantrell's purchase of the motor home was for use by Caballero for business or commercial purposes, i. e., for the purpose of furthering a business or commercial activity for gain.

The Bank's authorities for the foregoing contention are: *Sapenter v. Dreyco, Inc.*, D.C.La.1971, 326 F.Supp. 871, aff'd at 450 F.2d 941 (5th Cir., 1971, with certiorari denied at 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120); *Brill v. The Newport National Bank*, CCH Consumer Credit Guide, Transfer Binder, par. 99,057 (U.S.D.C., So. Dist. of N.Y., Feb. 20, 1973); *Puckett v. Georgia Homes, Inc.*, 369 F.Supp. 614 (U.S.D.C., Dist. of So. Carolina, 1974).

Necessarily does the Bank make the contention for though it prevailed upon the court to submit a special issue to the jury on its contention, the jury refused—by its negative answer thereto—to find Cantrell's purchase of the motor home to have been for business or commercial purposes.

■ There was nothing in the evidence which even raised the issue of any intended use of the motor home for anything other than living purposes by the Caballeros. That the motor home happened to have wheels so that it was movable would not qualify it as acquired by them for business or commercial purposes. There was nothing more shown by the evidence. Cantrell did not even participate in the purchase with expectation of personal gain; he simply lent his credit with the hope and expectation that the Caballeros would finish paying for the vehicle. The authorities upon which the Bank places reliance are without application to the case and it may not claim any benefit of exclusion by the aforementioned § 1603 of U.S.C.A. Title 15.

■ Giving limited effect to the jury's finding by Special Issue No. 2 (that the Bank failed to deliver a copy of the promissory note and security agreement) the trial court awarded Cantrell the maximum amount of $1,000.00 specified by federal law. The trial court did not award any part of the penalty provided by Texas law in effect on August 14, 1973. Cantrell was not awarded that which was provided by Art. 5069–8.01, then in effect. (The material time was prior to that upon which the Texas legislature enacted statutes intended to bring state law into conformity with federal law.) In this the trial court erred. We hold that the amount provided, calculable with mathematical exactitude, was also the entitlement of Cantrell.

Cantrell insists that this court could cure the error of the trial court without remand. Furthermore, on the authority of the holding in *McDonald v. Savoy*, 501 S.W.2d 400, 408 (Tex.Civ.App.—San Antonio 1973, no writ history) he insists that the penalty provided by U.S.C.A. § 1640, aforementioned, and the penalty by V.A.T.S. Art. 5069–8.01 are both to be applied. The San Antonio court did in fact so hold.

While we doubt that provision for imposition of penalties by both the federal and state laws were intended by either the Congress or Texas legislature, yet the rules of construction compel that we hold in accord

with the San Antonio court in *McDonald v. Savoy*, supra. 53 Tex.Jur.2d, p. 280, "Statutes," § 186, "Statutes in pari materia."

Apart from the right to recover attorney's fees there would be no doubt but that Cantrell is entitled to $1,000.00 by the federal law, and furthermore entitled by Texas law (by mathematical computation to arrive at double the amount of interest contracted) an additional $5,887.20. This means that Cantrell has established his entitlement to a total amount of $6,887.20, without consideration of any amount as attorney's fees to which he would be entitled.

As heretofore noticed, the trial court, upon the basis of the jury finding in answer to Special Issue No. 2 and the award of $1,000.00 damages (here found to have been erroneous because the penalty provided by Texas law at the material time was not also granted) awarded additional recovery in the amount of $1,000.00 as attorney's fee. While the trial court might have awarded only $1,000.00 as attorney's fee even if there had been additional amount granted as damages (or penalties) the presumption may not be made by this court, in view of our reversal, that it would not have awarded more. Hence there must be remand of the case upon the question of attorney's fees. This element of Cantrell's entitlement under the applicable statutes must be fixed with knowledge and consideration of the total amount to which Cantrell was otherwise entitled to judgment. To do this would be the exclusive province of the trial court.

Cantrell contends that he was entitled to more as attorney's fees, even if as applied to his complaint of non-delivery of a copy of the note and security agreement the only other damages to which he is entitled is the $1,000.00 granted by the judgment. In one respect this is because he contends that by the jury's answers to Special Issues Nos. 3 to 5, inclusive, he is entitled to further damages, plus attorney's fees; but early in the opinion we have held that he was not entitled to such further damages because the court did not err in disregarding the answers. Not being entitled to the damages Cantrell would not be entitled to any attorney's fee for establishing an entitlement.

Cantrell's evidence on the amount of reasonable attorney's fees was never separated as applied to what would be a reasonable attorney's fee because of the Bank's failure to deliver a copy of the promissory note and security agreement from the amount which would be a reasonable attorney's fee as applied to the other separable and additional damages sought. On the latter he is not entitled to damages or attorney's fees; on the former he is entitled, by our holding, to more damages than was granted by the trial court and we are able to compute them in this case and render judgment which the trial court should have rendered. We cannot do likewise as applied to a proper award of attorney's fee.

We hold that the violations on the part of a lender which give rise to different counts of liability for damages are, and should be, treated as distinct causes of action for each of which imposition of the penal provisions are provided. The trial court could properly consider the counts on which Cantrell prevailed (and was entitled to damages) as a separate cause of action from that upon which Cantrell failed to prevail. As in the case of costs, the attorney's fees could be apportioned by the court in its entry of judgment even if Cantrell, as a plaintiff, had successfully established both his causes of action, so that the attorney's fee awarded as applied to each cause of action could be determined. 20 C.J.S. Costs § 17, p. 288, et seq. "(Apportionment of Costs)—Separate Counts or Causes of Action"; *St. Louis S.W. Ry. Co. v. Oliver*, 37 S.W. 642 (Tex.Civ. App., 1896, no writ history).

Without thought given to the separability of Cantrell's causes of action his attorney obtained the stipulation of the Bank's attorney that, if and in the event there was propriety of Cantrell's recovery, the total of one hundred sixty-nine and one-half (169½) hours time would have been expended by his attorney (through the appeal), and that a reasonable hourly charge of the attorney therefor would be at the rate of $40.00 per

hour. This would purport to be an attempt to stipulate the sum of $6,780.00 as reasonable attorney's fees. It could only have been an attempt to do so as applied to the successful establishment of Cantrell's right to recover under both his causes of action.

■ Anyway the trial court fixed by the judgment an allowance to Cantrell of $1,000.00 as attorney's fees he was entitled to recover over against the Bank. The court was at liberty to disregard the stipulation because Cantrell prevailed in only one cause of action. Furthermore, our opinion is that even if Cantrell had prevailed in both it would be correct for the court to consider other appropriate matters in the ultimate decision. That ultimate decision would be what Cantrell should pay his attorney (to be adjudged over against the Bank as a penalty). The attorneys for the litigants in a case such as this are not, nor should they be, empowered by stipulation to hamper the court in the discharge of its duty to administer justice under the law in respect to the proper award of attorney's fees. Were the law otherwise there would be opportunity for its misuse.

On the foregoing see 1 *Attorney's Fees*, Speiser, the following: Chapter 12, "Allowance of Fees as Costs," p. 540, § 12:55, "Where attorney's fee regarded as penalty"; Chapter 13, "Allowance of Fees as Damages," p. 674, § 13:44, "Criteria for determining amount of allowance"; p. 676, § 13:45, "Procedure for determination of allowance."

Even if Cantrell had prevailed on both causes of action, the stipulation was not one to which there must be rigid adherence and the trial court would not have been bound thereby. It is obvious that to hold otherwise would, by construction, be to hold that it was proper to inflict injustice—initially upon Cantrell, and by and through him upon the Bank from which he was entitled to receive indemnity—and this would be true even had we not held that it was proper for the trial court to treat the separate counts of liability as separate causes of action. 83 C.J.S. Stipulations, § 13, p. 31, "Conclusiveness in General."

■ Though in this case it is not Cantrell, the client, who is sued for attorney's fees, it would be correct to treat the situation as though it were, for in application of the law it would be a distinction without a difference. Contractual provisions for payment of necessarily incurred attorney's fees are enforceable only to the extent that the amount stipulated is reasonable within the limitations imposed by any applicable statute and the court may accordingly inquire into the reasonableness of the specified amount and reduce it where, under the circumstances, it is deemed excessive in contract cases, as between attorney and client. 2 *Attorney's Fees*, Speiser, Chapter 15, "Allowance of Fees in Accordance with Contractual Stipulations," p. 360, § 15:44, "Court's power to alter amount stipulated"; 25 C.J.S. Damages § 91(a), p. 981, "Litigation Expenses and Attorney's Fees." The rule is appropriate as well, even more occasion presented, where there must be imposition of a penalty against a defendant in the form of an attorney's fee reasonably due by a plaintiff to his own attorney. Reasonableness of attorney's fee in either case should be that which a client should pay his own attorney for services; the theory at law involving the question of what the client should pay, with ancillary provision that he be entitled to recover over on a liability premise from a third party.

We affirm the judgment of the trial court that Cantrell take nothing as applied to his action under the Texas Business and Commerce Code. We sever from the case as filed and tried the cause of action in which the trial court's judgment is affirmed.

We reverse the judgment of the trial court as applied to the cause of action predicated upon the trial court's failure to award Cantrell the statutory damages provided by Texas law in Art. 5069–14.19 in effect at time of the parties' transaction on August 14, 1973. Judgment is here rendered that Cantrell recover of and from the Bank the total of the statutory damages by federal and state law in the amount of $6,887.20, plus legal interest from Septem-

ber 17, 1976, date of the trial court's judgment.

The case and cause of action upon which judgment below granted Cantrell judgment for $1,000.00 attorney's fees is severed and remanded to the trial court for the purpose of determining the amount which would constitute a reasonable attorney's fee under the facts and circumstances of Cantrell's cause of action because of the Bank's failure to deliver to him a copy of the note and security agreement (pursuant to the transaction of August 14, 1973).

Costs of appeal are taxed against the Bank.