**DENNIS WEAVER CHEVROLET, INC., Appellant,**

v.

**Mrs. George CHADWICK, Appellee.**

**No. 8182.**

Court of Civil Appeals of Texas, Beaumont.

Dec. 14, 1978.

Rehearing Denied Jan. 11, 1979.

George Sladczyk, Jr., Port Arthur, for appellant.

Tommy A. Gunn, Orange, for appellee.

KEITH, Justice.

Defendant below appeals from an adverse judgment based upon a jury verdict and we will designate the parties as they appeared in the trial court. The suit was maintained and submitted under the provisions of the Deceptive Trade Practices Act, *Tex.Bus. & Comm.Code Ann. Sec. 17.41, et seq. (Supp.1978)*, hereinafter "DTPA".

On June 14, 1976, plaintiff purchased a new 1976 model Chevrolet from defendant and the window sticker indicated that it was equipped with a four-barrel carburetor.

A week or so later, she discovered that the vehicle was equipped with a two-barrel carburetor and there was yellowish fresh gasket sealer on the engine block which, according to other testimony, indicated there had been a change in carburetors since it had left the factory.

Being unable to adjust her differences with the defendant on an amicable basis, suit was filed under DTPA and submitted upon several theories, none of which are included in the so-called "laundry list" found in *DTPA § 17.46(b)*. Defendant argues at length that insofar as it authorizes treble damages for acts or omissions not included in the laundry list, DTPA is unconstitutional. Defendant brings forward all of the arguments so ably articulated by Chief Justice Guittard in *Singleton v. Pennington*, 568 S.W.2d 367, 377 (Tex.Civ.App. —Dallas 1977, writ filed), and Chief Justice Greenhill's caveat expressed in the concurring opinion in *Spradling v. Williams*, 566 S.W.2d 561, 564–565 (Tex.1978).

■ Defendant's constitutional challenge of the statute is contained in a supplemental brief filed long after our receipt of plaintiff's reply brief. While we granted leave to file a supplemental brief, we specifically provided in our order that no new points of error could be included therein. We decline to pass upon the constitutionality of this important statute in response to points of error not included in the original brief. See *Smith v. Hues*, 540 S.W.2d 485, 489 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.), and authorities therein cited. We turn now to a consideration of the points of error which are properly before us.

The jury answered all inquiries favorably to the plaintiff and fixed her damages for mental anguish at $1,300; the replacement cost of the four-barrel carburetor was determined to be $387.71—both damage figures being trebled in the judgment—and she was awarded attorney's fees stipulated at $750.

We summarize the plaintiff's jury findings in the margin,[1] noting here that the jury refused to find that the sole cause of plaintiff's damages was the theft by unknown persons of the four-barrel carburetor without the knowledge or consent of the defendant; and it answered negatively an inquiry if plaintiff allowed defendant a reasonable opportunity to cure the defect in her car.

Defendant argues at length that the trial court erred in permitting a recovery of damages for mental anguish and we will direct our attention to that contention first. Primary reliance is placed on *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81, 86 (1953), from which we take this lengthy excerpt:

"[M]ental anguish, standing alone, is too subtle and speculative to be measured by any known legal standard; mental anguish and its consequences are so intangible and peculiar and vary so much with the individual that they cannot reasonably be anticipated, hence they fall without the boundaries of any reasonably proximate causal connection with the act of the defendant; a 'wide door' might thereby be opened not only to fictitious claims but to litigation over trivialities and mere bad manners as well; and, finally, since mental anguish can exist only in the mind of the injured party, not only its extent but its very existence can be established only by the word of the injured party, in the absence of some objective injury."

The *Harned Court* refused to adopt the "new tort", saying that "we think the Legislature should determine whether the rule contended for by Harned is to be adopted in this state." *Id.* The Supreme Court again commented upon the "new tort" and relaxed, only slightly, the *Harned* holding in *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967). In the quarter century following *Harned*, the legislature has not adopted the "new tort".

Defendant's scholarly brief also calls attention to the slight modification of the *Harned Rule* in *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 907 (Tex.Civ.App.— Houston [14th Dist.] 1969, writ ref'd n. r. e.). Other cases are cited as shown in the margin.[2]

■ Although it created an entirely new cause of action in enacting DTPA, and notwithstanding the fact that it directed the courts to be guided by interpretations of the federal courts construing the Federal Trade Commission Act [*§ 17.46(c)(1) and (2)*], the legislature did *not* adopt the "new tort" of mental anguish as an element of damages. Instead, it provided in *§ 17.-50(b)(1)* that the consumer who prevails may obtain "three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended."

In adopting DTPA, the legislature is presumed to have known of the decision in *Harned*, supra, that the question of the

---

1. Four main theories of recovery were submitted: (1) the failure to furnish an odometer statement was an unconscionable act and a deceptive trade practice, each of which was a producing cause of an adverse effect on plaintiff; (2) defendant placed a two-barrel carburetor on the car which was an unconscionable act and a deceptive trade practice, each being a producing cause of an adverse effect on plaintiff; (3) defendant removed the four-barrel carburetor from the car and replaced it with a two-barrel carburetor, which was an unconscionable act and a deceptive trade practice, each being a producing cause of an adverse effect; and (4) defendant used deceptive representations of geographic origin of the car which was a producing cause, etc.

2. "Recovery for mental anguish, in absence of physical injury, has been allowed by Texas Courts in very limited cases. *Ledisco Financial Services v. Viracola*, 533 S.W.2d 951 (Tex.Civ. App., Texarkana, 1976 no writ) (debt collection case); *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973) (intentional wiretap); *Fisher v. Carrousel Motor Hotel*, supra (assault and battery); *Pat H. Foley & Co. v. Wyatt*, supra (viewing dead body); and negligent misdelivery of 'death message' telegrams. *Western Union Telegraph Co. v. Buchanan*, 61 Tex.Civ.App. 212, 129 S.W. 850 (San Antonio, 1910 no writ).

"Recovery was denied in a breach of warranty case involving a defective slab. *Rogowicz v. Taylor & Gray, Inc.*, 498 S.W.2d 352 (Tex.Civ. App., Tyler, 1973 writ ref'd n. r. e.)."

adoption of the rule permitting a recovery for mental anguish in the absence of physical injury was for its own determination—not that of the courts. See *Allen Sales & Service-Center, Inc. v. Ryan,* 525 S.W.2d 863, 865–866 (Tex.1975), and authorities therein cited.

Mental anguish was mentioned in *Woods v. Littleton,* 554 S.W.2d 662, 672 (Tex.1977), but it must be admitted that it was treated only peripherally in the concluding paragraph of an otherwise lengthy opinion addressing other points in the case necessary to the interpretation of the statute.[3] We are not persuaded that this passing reference to mental anguish amounted to the adoption of the "new tort" and the overruling of *Harned* sub silentio.

The fact structure of this case demonstrates the soundness of the rule which would deny recovery for mental anguish in a suit under DTPA in the absence of physical injury. However, we first review very briefly the theory of mental anguish to see its inapplicability to a two-barrel versus four-barrel carburetor controversy.

Black's Law Dictionary (Rev. 4th Ed. 1968), cites *Western Union Telegraph Co. v. Chamberlain,* 169 S.W. 370 (Tex.Civ.App.—Austin 1914, no writ), as one source of the definition of the term. We take this somewhat lengthy excerpt from *Chamberlain*:

"What is mental anguish? The Supreme Court of North Carolina in *Hancock v. Telegraph Co.,* 137 N.C. 497, 49 S.E. 952, 69 L.R.A. 403, said:

" 'There is a very material difference between the significance of those words ("disappointment" and "regret") and that keen and poignant mental suffering signified by the words "mental anguish." * * * . . . * * * The lexicographers define anguish to be "intense pain of body or mind." It is derived from the Latin word "anguis," a snake, referring to the writhing and twisting of the animal body when in great pain.'

"This definition of 'mental anguish' might well have been deduced from the general tenor of Texas cases on this subject, and is in accord with the decisions in other states. We quote from 37 Cyc. p. 1780, as follows:

" 'It is well settled however, that damages cannot be recovered on this ground for every mental disturbance or injury to the feelings, and that to constitute mental anguish there must be something more than worry, vexation, or disappointment or anger or resentment.' "

The rules enunciated in the several old cases are compatible with the law as it is reflected in the encyclopedias; see, e. g., *25 C.J.S. Damages § 64, p. 817 (1966),* and Texas cases therein cited.

It is appropriate to note at this point that plaintiff has recovered $3,900 for her mental anguish, which in view of the evidence in the case is deemed "substantial damages". Consequently, this observation invokes the language used in *Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246, 250, 146 A.L.R. 732 (1942):

"Another general rule leads to the same conclusion. It is that mental anguish without other actual injury will not support the recovery of substantial damages."

■ Our holding that damages for mental anguish may not be recovered under *DTPA § 17.50* in the absence of physical injury is consistent and harmonious with the holding in *Cantrell v. First Nat. Bank of Euless,* 560 S.W.2d 721, 727 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n. r. e.), wherein the court said:

"We hold that the *actual damages* meant by Texas Business and Commerce Code, in the aforementioned § 17.50, are common law damages only." (emphasis in text)

We return now to the reserved comment as to the evidence introduced supporting

---

**3.** The factual development of the question of mental anguish in *Woods v. Littleton,* in both published opinions leaves much to be desired.

plaintiff's theory of the recovery of damages for mental anguish and now note that the following resume contains all of the evidence tending to support the award of mental anguish.

Plaintiff took her car back to the defendant's shop but refused to leave it for repair; she called the salesman who told her to bring the car back but she refused again. Upon being asked if that was embarrassing, she replied, "[I]t was very upsetting. It still is."

She contacted a Mr. Lewis with the defendant's agency who told her that "he was going to attempt to satisfy" her and he "told me to bring the car back, and at that time I told him 'No', I did not plan on going through that again, the car motor had been altered and I didn't have a new car, anyhow."

Finally, her counsel asked:

"Q  Mrs. Chadwick, during the course—well, since June, 1976, would you tell the jury what, if any, inconvenience or mental anguish this had caused you about this car.

"A  The first anguish that started was the day I went to Dennis Weaver to, I was told to pick out a new car and when Mr. Lewis took me out on the lot, and as I turned around and looked they had quite a gathering of people in the window. I wasn't there on display, all I wanted was what I bought.

"Q  Was there a bunch of salesmen looking at you on the lot, is that what—

"A  I don't know if they were salesmen or who they were, but there was a gathering of at lease four people in the window looking out watching. It was embarrassing.

"Q  Did this cause—was it embarrassing to you?

"A  Yes, it was.

"Q  Was there any other inconvenience or mental anguish that you've suffered, Mrs. Chadwick?

"A  Yes, I have had to miss work; I have been out numbers of phone calls. My time has been occupied—

many days I've had to leave work and go back because of all of this.

"Q  Are you still dissatisfied with the car as it now is, Mrs. Chadwick?

"A  I'm very dissatisfied. I have never had the new car that I am still paying for."

■ In addition to the earlier holding that damages for mental anguish may not be recovered under *DTPA § 17.50* in the absence of physical injury, we hold (a) the foregoing constitutes no evidence of mental anguish; but (b) if we should be mistaken and it should be determined that such damages are recoverable under the Act, we now hold that the evidence is factually insufficient to support an award for mental anguish. In making these latter determinations, we have followed the requisite standards for evaluating the testimony in our record. See, e. g., *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

We sustain defendant's points of error numbered 17, 18, and 19. The award of $1,300 for damages because of mental anguish suffered by the plaintiff is here and now set aside and the judgment of the trial court will be reformed so as to deny any monetary recovery for mental anguish.

When the car was delivered to plaintiff, the odometer registered 72 miles. Noting this before the delivery, plaintiff asked the salesman the reason therefor and was informed that the car had been driven from Houston to Port Arthur. Other evidence established the falsity of this statement, the car having been transported from the factory by rail and by truck; but the reason for the mileage shown upon the odometer is not disclosed in our record. Plaintiff did not ask for, nor did she receive, an odometer statement.

She frankly admitted on cross-examination that she did not have any way of knowing what damages, if any, she sustained because of the failure to receive an odometer disclosure, but she was seeking damages therefor. She was asked:

"Q  Well, you're in here asking for damages?

"A Yes, I am, yes, sir.

"Q And I'm asking you to tell us what they are. . . .

"A I have come up with a damage of two thousand dollars.

"Q That was for mental anguish?

"A That's correct."

There is no contention advanced that the odometer had been turned back or that plaintiff was mislead as to the number of miles the car had been driven before it was delivered to her.

The jury found that the failure to provide an odometer disclosure statement was "an unconscionable act",[4] which was a producing cause of an adverse effect upon plaintiff. The jury found, in answer to another series of issues, that the failure to provide an odometer statement was a deceptive trade practice[5] which was a producing cause of an adverse effect upon plaintiff. No specific amount of damages was found to have been caused by these two omissions of defendant, the damages, if any, being lumped into the "mental anguish" award.

*DTPA § 17.46(b)(16)* provides specifically that one is guilty of a deceptive trade practice in "disconnecting, turning back, or resetting the odometer of any motor vehicle so as to reduce the number of miles indicated on the odometer gauge." There is no contention that such was done in this instance and there is no requirement in the Texas DTPA which requires the furnishing of an odometer statement.[6]

We now hold, based upon the record before us, that plaintiff has failed to establish any violation of DTPA because of the failure of defendant to furnish an odometer statement at the time of the delivery of the vehicle. Moreover, we hold that she has failed to prove any damages recoverable under the Act or at the common law. Consequently, the findings[7] with reference to the odometer are wholly immaterial to any recovery herein and the trial court erred in failing to sustain defendant's motion to disregard such findings.[8]

The jury, in response to several issues, found that the defendant removed the four-barrel carburetor from the car and replaced it with a two-barrel carburetor. These findings were followed by findings that such acts constituted unconscionable conduct and, separately, deceptive trade practices which, in each instance, was a producing cause of an adverse effect on plaintiff.

Among the objections leveled at such issues by the defendant was "that there are no pleadings by the plaintiff to support the submission of these issues." We have examined the plaintiff's trial pleadings and do not find any allegation therein which would support the submission of the issues that the defendant's agents actually removed the four-barrel unit and substituted a two-barrel device on the car.

It is the settled law in this state when a cause is submitted on special issues, only those controlling issues "that are raised by the written pleadings and the

---

4. "Unconscionable action" was defined as "any act or practice which, to a person's detriment:
   a. Takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or,
   b. Results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration."

5. The court defined "deceptive trade practice" as meaning "a course of conduct that, when performed in trade and commerce, has the *tendency and capacity to mislead that portion* of the general public toward whom such conduct is directed.
   "In determining 'tendency' and 'capacity to mislead', you are instructed to look to the over-

all impression such conduct would have on the general public, including the ignorant, the unthinking and the unsophisticated."

6. For a discussion of the federal aspect of the odometer requirement, see *Shepherd v. Eagle Lincoln Mercury, Inc.*, 536 S.W.2d 92, 95 (Tex. Civ.App.—Eastland 1976, no writ).

7. *The special issues relating to the odometer* statement are in two clusters: Special Issues 3, 4, and 5 in one cluster, with 12, 13, and 14 being in the second.

8. Defendant challenged these findings in its motion to disregard the answers in grounds II and V.

evidence" shall be submitted. *Tex.R.Civ.P. 277.* A similar provision is to be found in *Tex.R.Civ.P. 279* speaking to the submission of "the controlling issues made by the written pleadings and the evidence." [9]

In *Freitas v. Twin City Fisherman's Cooperative Ass'n,* 452 S.W.2d 931, 935 (Tex. Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.), the Court expressed the rule in this language:

> "Special issues should not be submitted to the jury where there is no pleading to support them. Rules 277, 279, T.R.C.P. *Matthews v. General Accident Fire & Life Assurance Corp., Ltd.,* 161 Tex. 622, 343 S.W.2d 251; *Murray v. Brazzel,* Tex. Civ.App., 438 S.W.2d 382, 386, wr. ref. n. r. e. If objection is made to their submission because of lack of pleading, answers to such issues will not support a judgment. *Harkey v. Texas Employers' Insurance Association,* 146 Tex. 504, 208 S.W.2d 919."

See also *Rosenthal v. Texas Bank & Trust Co.,* 514 S.W.2d 127, 128–129 (Tex.Civ.App. —Eastland 1974, writ ref'd n. r. e.).

■ Plaintiff's recovery cannot be sustained upon the basis of the jury's findings to the special issues relating to the removal and substitution of the carburetors.

Defendant's twentieth point of error complains of the submission of Special Issue No. 23 inquiring of the cost "to replace the two barrel carburetor . . . with a four barrel carburetor." We set out the complaint in the margin.[10] We find the contention to be hypertechnical and without merit.

W. H. Gordon, a shop foreman in a Chevrolet dealership in nearby Port Neches with nine years experience, testified without objection that the cost of installing a four-barrel carburetor in plaintiff's car would be $387.71. He was asked: "Are these costs reasonable and necessary in this area?" and answered, "Yes, sir." Plaintiff was entitled to receive a car with a four-barrel carburetor on it and the jury correctly awarded her the reasonable and necessary cost thereof— the precise amount set out by Gordon: $387.71.

■ Defendant does not deny that plaintiff was entitled to receive a car with a four-barrel carburetor, or that it had not collected the full price for a new car so equipped; nor does defendant complain of the insufficiency of the evidence to support the cost of replacement of the carburetor. Its counsel did not interrogate Gordon as to replacement cost nor did it offer any evidence to refute the testimony of Gordon.

We do not find reversible error has been presented, and the twentieth point is overruled. We have also given careful consideration to the remaining points of error and, finding no merit therein, each is hereby overruled.

In accordance with the foregoing opinion, we reform the judgment of the trial court by denying any recovery for mental anguish; thus, we reduce the amount of the recovery by three thousand nine hundred dollars; and, as to the remainder of the judgment, it is in all things affirmed. For the reasons apparent from the opinion, and pursuant to *Tex.R.Civ.P. 448,* costs in this appeal are divided equally between the parties.

Judgment Reformed and Affirmed.

---

9. Defendant's objection to the charge preserved its right to complain on appeal. See *3 McDonald, Texas Civil Practice § 12.07—B, at 291 (1970 Rev. Vol.),* and authorities therein cited.

10. "Appellant contends that since the Jury was not asked to find the necessary and reasonable cost of repair replacement of the carburetor in Jefferson County, Texas, and the Appellant objected to the issue, the findings cannot be presumed, and in the absence of such findings, the Appellee is not entitled to recover her damage on the basis of the findings of the Jury on Special Issue No. 23."